JUDGE LINDSAY
delivered the opinion oe the court.
This case differs from that of McBurnie v. Overstreet (8 B. Mon. 300) in this: here the levy was indorsed on the execution at the time it was made, and the levy, sale, and return were all made while the sheriff was in office; in Over-street’s case the levy and sale were embraced in the same return, and were both indorsed on the execution after the term of the sheriff had expired and nearly a year after the sale. The court was nevertheless of opinion that the return was prima faeie evidence of both the levy and the sale, but subject to be impeached and falsified by extrinsic testimony. We do *427 not decide that the same rule could not apply in a case like this; but we are free to say that it should be allowed to control only where the presumption arising from the return of the officer is impeached by testimony of the clearest and most convincing character. The testimony before us falls far below the standard indicated. The court below therefore properly held the levy to be sufficient.
So far as the heirs at law and the general creditors of Thompson are concerned, it is indifferent whether Robards had or not accepted the deed to the land in Union County before the levy and sale under the Pegram execution.
Thompson, by executing, acknowledging, and causing the deed to be recorded, and by his participation in the sale and in the preliminary steps attending it, estopped himself from questioning the title acquired by the purchaser. Those claiming through or under him can occupy no more favorable attitude than that occupied by him while living.
The inadequacy of price is not so gross as to authorize the sale to be set aside on that account alone. The real contest in the case is between the commonwealth and Jackson, the execution purchaser.
The evidence shows with a reasonable degree of certainty that Robards, the grantee in the deed, was not apprised of its execution until after the 31st of January, 1871, the day upon which the commonwealth claims its lien attached to all the estate of Thompson by reason of the rendition of a judgment against him as trustee of the jury-fund for Daviess County by the Franklin Circuit Court.
As Robards was not aware of the execution of the deed, and as there is no proof that it was executed pursuant to an antecedent arrangement or contract, the ordinary presumption of law that a grantee does accept a conveyance made for his advantage does not apply in this case.
. To pass the fee-simple estate in lands the conveyance must *428 not only be executed and tendered to the grantee, but must be accepted by him. Until it is accepted the estate remains in the grantor; and if the rights of one of his creditors intervene before the acceptance, the interest acquired by such creditor will be protected against the claims of the grantee or any one holding under his title.
Appellee insists that the presumption arising from the delivery of the deed to the clerk ought to conclude the commonwealth. The clerk was not the agent of Robards to accept the conveyance. After it was recorded it was redelivered to Thompson, and remained in his possession up to the time of his death.
Thompson’s letter of December 15, 1869, does not indicate an intention upon his part to make the conveyance to Robards. It tends to show that he was then expecting to indemnify him out of the proceeds of certain notes secured by mortgage on Owensboro property.
The fair presumption from all the facts proved is that Thompson executed the conveyance for the sole purpose of enabling the sheriff to levy the executions issued on the sale-bonds of Robards on the land, intending thereby to protect Robards against further annoyance. In furtherance of this intention it was not necessary that Robards should be informed of what Thompson had done; and the statements of Thompson, proved by Yeisef and read by the court without objection, establish that Robards was not informed of the execution of the conveyance until after the 31st of January, 1870.
Under these circumstances, to hold that the title to the land had passed from Thompson to Robards before the judgment lien of the commonwealth attached would be to decide that a party can become the purchaser of land without his knowledge or assent, and that the acceptance of a deed of conveyance is not necessary for the transmission of the title from the grantor to the grantee. The authorities relied on by appellee to sup *429 port his view of the law accord with the conclusions of this court.
In 2 Washburn on Real Property (side page 581) the author says, “The better opinion seems to be that no deed can take effect as having been delivered until such act of delivery has been assented to by the grantee, and he shall have done something equivalent to an actual acceptance of it.”
The eases of Walker v. Walker (42 Ill. 311), Rivard v. Walker (39 Ill. 413), Robinson v. Gould (26 Iowa), and Ford v. Gregory’s heirs (10 B. Mon. 180) settle the doctrine as to the presumption of acceptance arising from the delivery of a deed to a third person or to the proper registering officer; but in neither of those cases is it intimated that the acceptance is not essential, nor that the presumption arising from the delivery is in general conclusive of the question of acceptance.
In the case of Tuttle v. Turner (28 Texas, 773) the court held that “ it is essential to the operative force and validity of a deed, if not actually delivered to the grantee or his agent authorized to receive it, to prove notice to him of its execution and such additional circumstances as will afford a reasonable presumption of his acceptance of it;” and the court further said, “ The presumption that a party will accept a deed because it is beneficial to him, it is said, will never be carried so far as to consider him as having accepted it.”
We conclude that the title to the Union County land remained in Thompson until after the 31st of January, 1870. If therefore the judgment against him in the Franklin Circuit Court is valid, the lien of the commonwealth attached to said land more than four months before the execution, lien, levy, and sale under which Jackson claims title had any existence.
Section 1, article 12, chapter 83, Revised Statutes, provides that “ if any sheriff, clerk, or other person authorized to collect or receive public money, revenue, or tax, shall fail to *430 account for or pay into the treasury as required by law, the auditor shall proceed in the name of the commonwealth, by motion or suit, without notice, to collect the same by judgment and execution.” The same article further provides that from the institution of the motion or suit a lien should exist in favor of the commonwealth on all the estate, legal and equitable, of the defaulting officer until the judgment should be fully satisfied.
Sections 5, 6, and 7, article 6, chapter 55, Revised Statutes, made it the duty of certain public officers to pay over to the trustee of the jury-fund “all fines and forfeitures or other funds in their hands,” and made it the duty of the trustee to superintend and control the collection of all fines and money pertaining to the jury-fund. He was therefore an officer authorized to collect and receive public moneys.
Section 11 of the article and chapter last named made it the duty of the trustee of the jury-fund to pay into the treasury by the first day of January in each year all balances remaining in his hands. If Thompson failed to pay into the treasury as thus required the balance remaining in his hands at the end of every year, the Franklin Circuit Court had jurisdiction to reader the judgment against him. If the proceedings upon which that judgment was rendered were irregular, the judgment may be liable to reversal upon appeal; but it can not in a collateral proceeding be treated as void. Jackson can not escape the effect of this lien because he had no actual notice of the judgment; he was bound under the law to take notice of it; nor can he have the cross-petition of the commonwealth dismissed because its judgment may be satisfied out of other estate left by Thompson or out of the estates of his sureties. The commonwealth can not be deprived of its right to prosecute its claim against all estate bound by its judgment until its debt is fully satisfied.
When the chancellor has marshaled the assets and is ready *431 to render a final judgment of distribution, the equities of the various creditors of Thompson, as well as thosé of his sureties on his bond as trustee of the jury-fund, and the right of Jackson to abandon his execution purchase and quash the return satisfying his execution, if he shall ask to have such relief, may be determined; but until that time arrives, or until the judgment in favor of the commonwealth is fully satisfied, its lien upon all estate owned by Thompson on the 31st of January, 1870, must be upheld.
The judgment dismissing the commonwealth’s cross-petition is reversed. As to the remaining appellants the judgment is affirmed. The cause is remanded for further proceedings consistent with this opinion.