[No. 7275. In Bank.—September 28, 1885.]

JAMES F. HIBBERD ET AL., RESPONDENTS, v. JOHN SMITH ET AL., APPELLANTS.

DEED—WHEN TAKES EFFECT—DELIVERY—INTENT.—A written instrument in the form of a conveyance of land does not take effect as a deed until it is delivered with the intent that it shall so operate.

ID.—WHAT CONSTITUTES DELIVERY.—What constitutes delivery is chiefly a question of fact, but a delivery is not complete until the grantor has so dealt with the instrument as to lose all control over it; and whether he has done so depends upon the intent to be deduced from all the surrounding circumstances.

ID.—DELIVERY TO STRANGER—ASSENT OF GRANTEE—PRESUMPTION.—The delivery of a deed to a stranger for the benefit of the grantee is deemed to be a constructive delivery to the latter only when his assent thereto or facts which authorize a presumption of such assent are shown.

ID.—DEED—WHEN NOT PRESUMED BENEFICIAL—CONSIDERATION.—A deed purporting on its face to be executed for the consideration of $5,000 will not be presumed beneficial to the grantee, in the absence of any evidence that the consideration has been paid.

ID.—JUDGMENT LIEN ACQUIRED BEFORE ASSENT OF GRANTEE.—Where a deed presumptively beneficial to the grantee is delivered to a third person for his use, without his knowledge or prior authorization, the subsequent assent of the grantee to the delivery will not operate to defeat the lien of a judgment creditor of the grantor which attached to the premises sought to be conveyed after the date of the delivery and before the assent of the grantee.

EXECUTION SALE—TITLE OF PURCHASER—RETURN OF SHERIFF—RELATION—PRIORITY.—On a sale of land under an execution, the title of the purchaser does not depend on the sheriff's return to the writ. The title relates back to and takes priority from the date of the judgment lien, and not from the date of any real or pretended statutory levy.

APPEAL from a judgment of the late District Court of the Fourth Judicial District, and from an order of the Superior Court of the city and county of San Francisco refusing a new trial.

The facts are stated in the opinion of the court.

*B. S. Brooks, T. H. Hittel, C. T. Botts, S. W. Holladay, Moses G. Cobb, John W. Dwinelle,* and *John Currey,* for Appellants.

The delivery of the deed under which the defendants claim to Aughinbaugh, for the use and benefit of E. S. Chipman, operated to pass the title at the time of the delivery to the former. (*Schroeder* v. *Gurney,* 73 N. Y. 430; *Everett* v. *Everett,* 48 N. Y. 218; *Cecil* v. *Beaver,* 28 Iowa, 241; *Tallman* v. *Cooke,* 39 Iowa, 402; *Mather* v. *Corliss,* 103 Mass. 568; *Jones* v. *Swayze,* 42 N. J. L. 279; *Ruckman* v. *Ruckman,* 32 N. J. Eq.

259; *Black* v. *Hoyt*, 33 Ohio St. 203; *Mitchell* v. *Ryan*, 3 Ohio St. 377; *Merrills* v. *Swift*, 18 Conn. 257; *Tibbals* v. *Jacobs*, 31 Conn. 428; *Burt* v. *Cassety*, 12 Ala. 734; *Rawson* v. *Fox*, 65 Ill. 200; *Ernst* v. *Reed*, 49 Barb. 367; *Hastings* v. *Vaughn*, 5 Cal. 513.) The deed being beneficial to the grantee, his assent thereto is presumed. (*Souverbye* v. *Arden*, 1 Johns. Ch. 246; 1 Wood's Conveyancing, 311, n. *b*; *Merrills* v. *Swift*, 18 Conn. 257; *Mitchell* v. *Ryan*, 3 Ohio, 377; *George* v. *McGregor*, 18 Cal. 587; *De Lavillain* v. *Evans*, 39 Cal. 123; *Le Cacheux* v. *Cutter*, 6 Cal. 519; *Nicoll* v. *Mumford*, 4 Johns. Ch. 629; *Church* v. *Gilman*, 15 Wend. 660; 30 Am. Dec. 82.)

*J. P. Hoge*, and *A. A. Cohen*, for Respondents.

The title of a purchaser of real estate at a sheriff's sale does not depend upon the return of the officer to the writ. (*Hibberd* v. *Chipman*, 50 Cal. 511; *Cloud* v. *El Dorado Co.* 12 Cal. 128; *Clark* v. *Lockwood*, 21 Cal. 220; *Hihn* v. *Peck*, 30 Cal. 280.) Where a deed is delivered for the use of the grantee to a third person having no authority to receive it, and is beneficial in fact, the law presumes the grantee will accept, not that he has accepted. An actual acceptance must exist to pass the title. But an actual acceptance cannot operate to defeat the rights of third persons which have attached subsequent to the delivery by the grantor. (3 Wash. Real Prop. 3d ed. 580, 581; *Hulick* v. *Scovil*, 4 Gilm. 175; *Townson* v. *Tickell*, 3 Barn. & Ald. 36; *Derry Bank* v. *Webster*, 44 N. H. 264; *Wheeler* v. *Emerson*, 44 N. H. 186; *Oxnard* v. *Blake*, 45 Me. 602; *Johnson* v. *Farley*, 45 N. H. 509; *Goodsell* v. *Stinson*, 7 Blackf. 437; *Day* v. *Griffith*, 15 Iowa, 104; *Denton* v. *Perry*, 5 Vt. 382; *Younge* v. *Guilbeau*, 3 Wall. 641; *Samson* v. *Thornton*, 3 Met. 281; *Elsey* v. *Metcalf*, 1 Denio, 323; *Powers* v. *Russel*, 13 Pick. 69; *Jackson* v. *Phipps*, 12 Johns. 418; *Jackson* v. *Bodle*, 20 Johns. 187; *Maynard* v. *Maynard*, 10 Mass. 458; 6 Am. Dec. 146; *Bell* v. *Farmers' Bank*, 11 Bush, 34; *Thompson* v. *Jackson*, 10 Bush, 424; *Tuttle* v. *Turner*, 28 Tex. 773; *Kingsbury* v. *Burnside*, 58 Ill. 321; *Welch* v. *Sackett*, 30 Wis. 649; *Taylor* v. *Robinson*, 14 Cal. 396; *Stephens* v. *Buffalo etc. R. R. Co.* 20 Barb. 332; *Oliver* v. *Stone*, 24 Ga. 70; *Jackson* v. *Perkins*, 2 Wend. 317.)

The COURT. — The opinion heretofore delivered in the above case is hereby approved and adopted by the court on rehearing, with the addition thereto of the following authorities: *Welsh* v. *Sackett et al.* 12 Wis. 243; *Kingsbury* v. *Burnside*, 58 Ill. 310; *Comme* v. *Jackson*, 10 Bush, 424; *Budd* v. *Hays*, 11 Ky. 34; *Palmelee* v. *Simpson*, 5 Wall. 81.)

Judgment and order affirmed.

McKEE, J., expressed no opinion; SHARPSTEIN, J., being disqualified, did not participate in the decision.

The following opinion above referred to was delivered in Bank on the 30th of July, 1884:—

THORNTON, J. — This action in our ordinary legal nomenclature is ejectment, to recover possession of a parcel of land situated in Alameda County. Judgment went for plaintiffs. Motion for a new trial by defendants was by order denied, and the defendants appealed from the judgment and order.

The main question discussed on the argument in this court relates to the delivery of a written instrument under seal bearing date 6th of January, 1855, purporting to have been made by William W. Chipman to Edward S. Chipman, and to convey the land in controversy.

As to this point the court below found the following facts:—

"That on the 6th day of January, 1855, said William W. Chipman signed and sealed a paper purporting to be a deed of grant, bargain, and sale to his brother, Edward S. Chipman, thereby purporting to convey the land described in the complaint in this action, and on the same day last named acknowledged the same in due form of law before William Hamilton, a justice of the peace of said county, and thereupon left said deed with said justice of the peace, until the same was handed to Gideon Aughinbaugh. The consideration mentioned in said deed was $5,000, and other valuable considerations; but in fact nothing was paid by said Edward S. Chipman to said William W. Chipman as the consideration for said conveyance, but said William W. Chipman was, at the time of making said deed, indebted to said Edward S. Chipman.

"At the time of making and depositing said deed with said

justice, the grantee therein named, Edward S. Chipman, was a resident of Holmes County, in the State of Ohio, and had been such resident there for six months previously, and had no knowledge of the making of such conveyance to him until after the 30th of June, 1855.

"Nor was the same ever delivered before that time to any person authorized or empowered by him to receive it. Nor did he ever before that time assent to the said conveyance to him. Said Aughinbaugh, at the time he received said deed from said justice, had no authority or power from said Edward S. Chipman to receive the delivery thereof for him, nor had he ever any such authority or power.

"That afterward, and prior to February 22, 1855, Edward S. Chipman, the grantee in said deed, then being in the State of Ohio, said grantor, Wm. W. Chipman, requested the said Gideon Aughinbaugh, who was an acquaintance and friend of said Edward S. Chipman, to go to the office of said justice of the peace, Wm. Hamilton, and to get the said deed, and to hold the same for Edward S. Chipman, at the same time stating to said Aughinbaugh that the law required that the said deed should be delivered to somebody for the grantee to make it a valid conveyance, as he, the grantee, was absent.

"In pursuance of such request the said Gideon Aughinbaugh called at the office of said justice, asked for and received said deed from him prior to February 22, 1855, and held the same in his possession for Edward S. Chipman, but without the knowledge or authority of said Edward S. Chipman.

"About two weeks afterward, said grantor, William W. Chipman, called upon said Aughinbaugh for said deed, asking that he might take it to get it recorded, which he accordingly did, and the same was duly recorded at the request of said William W. Chipman, in the county recorder's office of Alameda, County, on the 15th day of March, 1855.

"Said deed was delivered by the said William W. Chipman to the said Aughinbaugh, and was thereby intended by the grantor, William W. Chipman, as a delivery to and for the use and benefit of Edward S. Chipman, without condition or qualification.

"That afterward, June 30, 1855, the said Edward S. Chipman

returned from the State of Ohio to California, and shortly after-
ward took said deed into his own possession, and made several
conveyances of parcels of the land described therein to other
parties for full value, as elsewhere in these findings stated."

Other facts found by the court which bear on this question
of delivery are as follows: That on the 1st day of March,
1855, the plaintiff Hibberd recovered in the District Court for
Alameda County a judgment for the possession of a tract of
land in the county of Alameda against W. W. Chipman and
Gideon Aughinbaugh, and damages for withholding this land,
amounting to $8,600, and $536.55 costs of suit, which judgment
was duly entered of record and docketed in said court on the
1st day of March, 1855. On appeal, this judgment was affirmed
with costs, at the April Term, 1856, and the remittitur was
filed in the District Court last above named on the 27th of
March, 1856. The plaintiffs claim the land in suit under an
execution sale on this judgment, having been the highest bidders
for the same, for the sum of $1,200.

It will thus be seen that both parties claim under W. W.
Chipman, the plaintiffs under the judgment, execution sale, and
sheriff's deed above mentioned, and the defendants under the
alleged deed to E. S. Chipman.

The court also found as a conclusion of law that the paper
purporting to be a deed just above stated was, under the circum-
stances set forth in the foregoing findings of fact, void for want
of a valid delivery, as against the title acquired by plaintiffs
under the judgment above mentioned by sheriff's sale, "as set
forth in said findings of fact." The reference here is to the
findings above stated.

The act solemn and authentic, done in writing in form apt for
the conveyance of land, with signature and seal, does not take
effect as a deed until delivery with intent that it shall so operate.
The elements going to make up such a paper all constitute an
act *factum* or deed, but not complete until the paper has been
delivered with the intent above mentioned. The intent with
which it is delivered is all important. This restricts or enlarges
the effect of the instrument. It may be delivered to another
person as a mere custodian, or to such person to be kept by him
and delivered to a third person on a condition performed, or the

happening of a certain event, or it may be delivered that it may have full operation as the deed of the party delivering it. This may be done in various modes. It is impossible to state *a priori* in exact terms what shall or shall not constitute a delivery, that the paper may have its full operation as a deed. It is to a great extent a matter of fact depending upon intent, and under such circumstances the intent as evidencing what the maker of the instrument meant to do, must be found from the circumstances of the transaction, the *res gestæ*, and while some general rules may be and are laid down in regard to it to ascertain such intent, the intent must be found as a fact, and cannot always be determined as matter of law. There are some cases in which the intent is so plainly indicated by the *res gestæ* that but one conclusion can be deduced. Take the case of the delivery of such an instrument to a third person as a mere custodian for the party giving it, its solution is plain that there is no delivery of the paper to make it operative as a deed. Take another case of such a paper handed by the grantor to the grantee, with the declaration this is my act and deed, a delivery would be so plainly intended that no other conclusion could be reached. A third case of the delivery of such an instrument by the maker to a third person with directions to keep it and hand it to a person named as grantee in it, on the payment by him of a sum of money, the payment of the sum of money, and the tradition of the paper as directed having been made, no other result could be reached than that the paper became by such delivery an operative conveyance. These cases are simple, but in other cases where the intent is to be inferred from circumstances in their very nature equivocal, the solution as to delivery or not becomes one of difficulty, and depends so much on the subjective state of the mind of person or persons trying the issue produced by the evidence of the attending circumstances, that the law can lay down no certain rule on the subject. It then becomes a question of fact, and if there is evidence tending to sustain the finding of the court *a qua*, this court will not disturb it.

This is settled, that delivery is not complete until the person delivering (grantor) has so dealt with the instrument delivered as to lose all control over it. And whether he has so dealt with the instrument depends upon the intent to

be deduced from all the surrounding circumstances, the *res gestæ*.

And this is all that is determined in *Hastings* v. *Vaughn*, 5 Cal. 318. The case as reported is a singular one, and we should infer from the report that it is inaccurate. The case as stated by the reporter is this: It was an action of ejectment against Vaughn and Shirley to recover possession of a lot in the city of Benicia. Shirley answered disclaiming all interest (it had not then been decided that such a defense was of no avail in the action of ejectment), and Vaughn answered denying generally the allegations of the complaint. The mayor and common council of Benicia intervened and claimed title to the lot in suit through a deed from Malinda Cooper and her children, who claimed under a deed from Stephen Cooper. This latter deed was drawn in the usual form, and signed by Stephen Cooper, and opposite his name was written the word "seal." This deed had been acknowledged before and recorded in Solano County, by the county recorder for that county, but did not bear on its face his official seal. The court refused to permit this deed to be read in evidence to the jury, to which defendants excepted. The report proceeds: "The jury found that there had been a sufficient delivery, and gave a verdict for plaintiff." How a jury could find as to the delivery of a deed which had been excluded from their consideration, we do not understand.

It is further stated by Heydenfeldt, J., who delivered the opinion of the court, that the only question before the court necessary to be examined was as to the exclusion of the deed of Cooper from the jury, the court below having held that the deed was void for want of the seal of the grantor; and second, that the record did not impart notice for want of the seal of the officer before whom it was acknowledged. To these objections the respondent adds, the deed was not delivered. What the respondent's objections had to do with the case it was difficult to see. Judgment had passed in his favor and he did not appeal. The court had excluded the deed because it was not sealed, and for lack of the official seal of the recorder to the acknowledgment. It does not appear that any question as to delivery was made in the objections to the paper offered in the court below. Yet the jury to whom it never got, passed on the question of

delivery, and the court on appeal proceeds to pass upon the same question. The decision amounts to nothing more than this, which was undoubtedly correct, that delivery depends more on intention than the mode of fulfilling the intention; that delivery is a question of fact depending on intent to be found by the jury. If what was said is anything more than *dicta*, what is above stated is all that was decided. The *dicta* to be sure are clearly correct. *Garnons* v. *Knight*, 5 Barn. & C. 673, is only cited to establish the rule stated above, which the court says is the correct doctrine, and laid down in that case.

The court further proceeds to say of this case : "There, it was left to the jury to decide as to the intention of the grantor. Many authorities are cited, and much good reasoning brought out, in support of the position that a deed will be operative although never parted with by the person who executed it." The court also cites as sustaining the rule that delivery is a question of fact to be determined by the jury, in addition to *Doe ex dem. Garnons* v. *Knight*; *Lindsay* v. *Lindsay*, 11 Vt. 521; *Vanhook* v. *Barnett*, 4 Dev. 268; *Hannah* v. *Swarner*, 8 Watts, 9.

The question of delivery being one of fact, the decision of the court below that there was no delivery cannot be reversed by this court, unless from the specific facts found, the law establishes the fact of delivery. Does the law on the facts found conclusively establish the conclusion that there was a delivery of the paper as a deed?

To recapitulate, the facts found are that in January, 1855, W. W. Chipman signed and sealed a paper purporting to be a deed of grant to his brother, E. S. Chipman, and on the same day acknowledged the same before one Hamilton, a justice of the peace, and left the paper with Hamilton. At the time of the happening of the aforementioned events, E. S. Chipman was a resident of Holmes County, Ohio, and had been a resident thereof for six months previously, and had no knowledge of the making of such instrument to him until after the 30th of June, 1855. Nor was this paper ever delivered at any time to any person authorized by E. S. Chipman to receive it. Nor did E. S. Chipman ever, prior to the 30th day of June, 1855, assent to such conveyance to him. That after the 6th day of January, 1855, W. W. Chipman requested Gideon Aughinbaugh to go

to the office of Hamilton, the justice above mentioned, get this instrument, and hold it for E. S. Chipman, at the same time stating to Aughinbaugh that the law required that the deed should be delivered to somebody for the grantee, to make it a valid conveyance, as the grantee was then absent. Aughinbaugh, in pursuance of this request called at the office of the justice, asked for and received the deed from him prior to February 22, 1855, and held it in his possession for E. S. Chipman, but without the knowledge or authority of E. S. Chipman. When Aughinbaugh thus received this paper he had no authority or power from E. S. Chipman to receive the delivery thereof, nor did he ever have any such authority or power. After Aughinbaugh received this paper, W. W. Chipman called upon him and asked him for it, that he might take it to get it recorded, and it was recorded at request of W. W. Chipman in the proper office on the 15th of March, 1855. This paper was delivered by W. W. Chipman to Aughinbaugh, and thereby intended by the grantor, W. W. Chipman, as a delivery to and for the use. and benefit of E. S. Chipman, without condition or qualification. That afterwards, on June 30, 1855, E. S. Chipman returned from Ohio to California, and shortly afterward took the deed in his possession and made conveyances of parcels of the land described therein.

From the findings above stated in the preceding portion of this opinion, it appears that Hibberd's judgment became a lien on the land in controversy on the 1st day of March, 1855, it having been entered and duly docketed in the proper county on that day.

It is further found that the consideration mentioned in the deed was $5,000 and other valuable considerations, but in fact nothing was paid by E. S. Chipman to W. W. Chipman as the consideration of the conveyance, but that W. W. Chipman was at the time of making the deed indebted to E. S. Chipman.

The facts found might justify a finding that as between the two Chipmans, there was a delivery of the deed to E. S. Chipman. But do they show conclusively as a matter of law that there was a delivery as against Hibberd? Hibberd had a lien on the property as early as the 1st of March, 1855. It is found that the delivery was made to Aughinbaugh prior to March 1,

1855, for the use and benefit of E. S. Chipman, but at that time Aughinbaugh was not the agent of E. S. Chipman, who was absent and knew nothing of the paper until the 30th of June, 1855. That assent is necessary to the delivery of a deed, whether such delivery is actual or constructive, is settled law. This is plainly declared in section 1059 of the Civil Code. In section 1054 it is provided that a grant or conveyance (see § 1053) takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor. Section 1059 of the Civil Code is in these words: "Though a grant be not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases:—

"1. When the instrument is, by the agreement of the parties at the time of execution, understood to be delivered, and under such circumstances that the grantee is entitled to immediate delivery; or,

"2. When it is delivered to a stranger for the benefit of the grantee, and his assent is shown or may be presumed."

It is then a valid, constructive delivery when, as in this case, it is delivered to a stranger for the benefit of the grantee, but only then when the assent is shown or may be presumed. It is contended here that the assent should be presumed, and presumed, too, as a matter of law.

The delivery founded on a presumption which is matter of fact, must be found by the court below. This court cannot find facts. It can only construe facts found, and deduce from them the proper legal conclusion. The court below has found against this presumption, and unless the deductions of law to be drawn from the facts found show a presumption of assent, this court cannot reverse the judgment of a court a qua on this point. As between the parties to this conveyance, this presumption, it may be conceded, might be indulged. But when can it be presumed that such assent was given by the grantee? Can it be presumed that it was given before it was known by the grantee? We cannot understand that any such presumption can be sustained. It may be that if E. S. Chipman had known of the conveyance when it was delivered to Aughinbaugh, he would have accepted it. But the question here is not, what the grantee would have done, but what was done. And there is no finding

of any assent here earlier than the 30th of June, 1855, long after Hibbard had obtained his lien by judgment. The statute (Civ. Code, § 1059) does not recognize a delivery as perfected until an assent is proved either by act or by presumption. And when reliance is placed on a presumptive assent, how can such presumptive assent be found to the delivery of a paper, until all the facts are known to the grantee. In this case there is nothing found which shows that E. S. Chipman knew any of the facts until the 30th of June, 1855. E. S. Chipman was not bound to accept this conveyance. The law does not force a man to take an estate against his will. (*Townson* v. *Tickell*, 3 Barn. & Ald. 36; *Thompson* v. *Leach*, 2 Vent. 198.) In this last case it was held that an estate did not pass by surrender to the surrendree until he expressly accepted it. In *Townson* v. *Tickell*, a devisee renounced a devise of a reversion to him, and it was held that he could do so.

It is said that the conveyance was for the benefit of E. S. Chipman, and therefore his assent must be presumed. We do not feel assured that the deed is on its face for the benefit of the grantee. It is not found that the purchase money was paid, or that the deed acknowledges the receipt of the sum ($5,000) named as the consideration. Nor does it so appear in any other way. Under these circumstances, E. S. Chipman would be bound to the grantor for the sum named, and he might maintain an action for it, and sue out a writ of attachment and seize the property of the grantee. It is not found that the deed was made to the grantee as a payment of indebtedness. If the purchase money exceed the indebtedness of the grantor to the grantee, the amount of which is not found, then the grantee would become the debtor of the grantor for such excess. Under these circumstances, we do not think that we can hold that the deed is on its face beneficial to E. S. Chipman. And conceding that it was beneficial, are we authorized to hold an assent to the delivery as against a creditor with a lien, at a time when the grantee was entirely ignorant of the whole transaction? It would be, in our judgment, going further than is allowed by law, to hold under such circumstances that such a lien as Hibberd procured by his judgment should be displaced by a presumed assent to a transaction of which the party invoking the

presumption knew nothing until long after the lien had attached.

It may be remarked here that the delivery must be complete before the lien attached to create a superior right in Chipman. If the presumptive assent is indulged, when must such assent be held to have been given? We find no rule of law fixing the time. We know of no rule of law authorizing us to allow an assent given on being made acquainted with the facts, a retro- active operation so as to cut out and extinguish a right which attached between the signing and sealing and delivery to a stranger, and the assent given when the transaction comes to the knowledge of the grantee.

The cases cited for the most part have not in them the ele- ment of an intervening right acquired against the grantor. No such element appears in *Hastings* v. *Vaughn*. The same may be said of *Peavy* v. *Tilton*, 18 N. H. 152; *Souverbye* v. *Arden*, 1 Johns. Ch. 254; *Taw* v. *Bury*, 2 Dyer,· 167. In these cases the controversy was between grantor and grantee, or those claiming under them and standing in their places. In *Buffum* v. *Green*, 5 N. H. 80, 20 Am. Dec. 562, an intervening right under the levy of an attachment was set up, and the court said that if the land was attached before the deed was delivered, the claim under the attachment would prevail. In *Hulick* v. *Scovil*, 4 Gilm. 159, a great many cases on this subject are cited and reviewed. We refer the curious to the discussion of the cases therein contained. The learned judge, speaking for the majority of the court (two justices dissented) sums up the principles determined by the decided cases as follows:—

" I. In every deed there must necessarily be a grantor, a grantee, and a thing granted (4 Cruise, 12); that delivery by the grantor and acceptance by the grantee are essential to the validity of a deed; that a deed takes effect only from its delivery, and there can be no delivery without acceptance, either express or implied, delivery and acceptance being necessarily simultane- ous and correlative acts. (*Richards* v. *Jackson*, 6 Cowen, 617; *Church* v. *Gilman*, 15 Wend. 658. Other authorities cited *post*.)

" II. Delivery may be made, *first*, to the party himself, or any other by his appointment, or to any one authorized to receive it; or *second*, to a stranger for and in behalf, and to the

·use of him to whom it is made, without authority, under certain circumstances. (2 Roll, 24 *l*, 42; Touchstone, 57; see *post.*)

"III.  In case of delivery to a stranger, without authority from the grantee to accept, the acceptance of the grantee at the time of delivery will be presumed, under the following concurring circumstances, viz.: (1) That the deed be upon its face beneficial to the grantee; (2) that the·grantor part entirely with all control over the deed; (3) that the grantor (except in case ·of an escrow) accompany delivery by a declaration, intention, or intimation that the deed is delivered for and in behalf, and to the use of the grantee; (4) that the grantee has eventually accepted the deed and claimed under it. (4 Cruise, 34; Touchstone, 57, and other authorities *post;* 4 Gilm. 175, 176.)

The opinion shows that the last requisite mentioned where there is a delivery to a stranger, "that the grantee has eventually accepted the deed and claimed under it," must exist before the delivery is accomplished. A presumption that the grantee will accept the deed is not sufficient to establish delivery. The presumption must be that there has been an acceptance, and the facts must authorize such a presumption to complete·a delivery. (See remarks in opinion reviewing *Doe ex dem. Garnons* v. *Knight,* 5 Barn. & C. 671, on p. 180 of 4 Gilm.) There must be delivery and acceptance before the right of another has attached. An acceptance after such right has vested is not sufficient.

The cases cited and discussed·in *Hulick* v. *Scovil,* are as follows: *Bryan* v. *Wash,* 2 Gilm. 557; *Souverbye* v. *Arden,* 1 Johns. Ch. 240; *Verplank* v. *Sterry,* 12 Johns. 546; 7 Am. Dec. 348; *Church* v. *Gilman,* 15 Wend. 656; 30 Am. Dec. 82; *Doe ex dem. Garnons* v. *Knight,* 12 Eng. C. L. 351; S. C. 5 Barn. & C. 671; *Taw* ·v. *Bury,* Dyer, 161 *b*; *Alford* v. *Lea,* 3 Coke, 27; *Butler* v. *Baker,* 3 Coke, 26 *b*; *Cooke's Admr.* v. *Hendricks,* 4 Mon. 500; *Inlow* v. *Commonw.* 6 Mon. 74; *Belden* v. *Carter,* 4 Day, 66; 4 Am. Dec. 185; *Hatch* v. *Hatch,* 9 Mass. 207; 6 Am. Dec. 67; *Ruggles* v. *Lawson,* 13 Johns. 285; 7 Am. Dec. 375; *Wheelwright* v. *Wheelwright,* 2 Mass. 47; *Hedge* v. *Drew,* 12 Pick. 141; 22 Am. Dec. 416; *Ward* v. *Lewis,* 4 Pick. 518; *Powers* v. *Russell,* 13 Pick. 77; *Buffum* v. *Green,* 5 N. H. 71; 20 Am. Dec. 562; *Ward* v. *Ross,* 1 Stewt. 136; *Canning* v. *Pinkham,* 1 N. H. 357; *Clark* v. *Ray,* 1 Har. & J. 323; *Hughes* v. *Easten,* 4 Marsh. J. J. 572; 20 Am.·

Dec. 230. · The above cases·are put·in the opinion in a separate class from those which follow. The cases which follow, also cited and commented on, are those in which the deeds for want of acceptance·by the grantee were held inoperative.· (Fay v. Richardson, 7 Pick. 91.; Jackson v. Leek, 12 Wend. 107; Herbert v. Herbert, 1 Ill. 278;·13 Am. Dec. 192; Jackson v. Phipps, 12·Johns. 418; ·Jackson v. Dunlap, 1 Johns. Cas. 114; ·1 Am. Dec. 100; Ferguson v. Miles, 3 Gilm. 363; ·44 Am. Dec. 702; · Jackson v. Bodle, 20 Johns. 188; ·Maynard v. Maynard,·10 Mass. 462; Lloyd's Lessee v. Giddings, 7 Ohio, 418; Elsey v. Metcalf, 1 Denio, 326.)

Of a large number·of these· cases it may be said of the deeds ·involved in them, as was said ·in the opinion of the court in Hulick v. Scovil, that they ·"were voluntary deeds by· ·parents ·settling property upon their·minor children; and the benignity of construction given·to them, has originated·to no inconsiderable ·extent in the favor with· which transactions of that character when not in fraud of creditors are always viewed." . (4 Gilm. 178.) · And this further remark may be made·of all·of them except ·Buffum·v. Green, 5 N. H. 71; 20 Am. Dec. 562; Hedge·v. Drew, 12 Pick. 141; 22 Am. Dec. 416; that they were between grantor and grantee;·or those·claiming under them, without the intervention of any right of a third party claiming under .the grantor. And in Buffum ·v. Green, supra, it appeared that there·had been an actual delivery to one of the grantees·before the levy of the attachment·on the·land. · (See 5 N. H. 80.) · In Hedge v. Drew, supra, the assent to the deed was also before·the attachment.·

That the delivery of· a deed to a third ·person · for the use of the grantee is not always a delivery from a presumed acceptance has been asserted in cases of high authority; as in ·Butler v. Baker, 3 Coke, 26 ·b.; ·Lord Coke·said: "If A·make an obligation to B and deliver it to C·to the use of ·B, this is the deed of A presently; but if C offer it to·B, then B may refuse it in pais, and thereby the obligation will lose its force." In Canning v. Pinkham, 1 N. H. 357, it is·said: "All that is incumbent on the grantee ·[this is said. where delivery is to a stranger], in order to perfect delivery, is that he accept or assent to what has been done ·by the grantor before the latter·revokes his intention to convey." What is said by ·Lord Coke in Butler v. Baker seems ·to be·in conflict ·with Taw v. Bury, and in accordance

with what is said in *Canning* v. *Pinkham*.  If W. W. Chipman before the assent and acceptance by E. S. Chipman had conveyed to another, the latter would have acquired the title.

As between grantor and grantee, or those claiming under them, when the right of a third person is not involved, it may be rightly held that an acceptance or assent by the grantee to a deed delivered to a stranger for the use of the grantee, made after such tradition to a stranger, constitutes a full and complete delivery.  It may be so held under the doctrine of relation. The subsequent assent or acceptance relates back to the time of such delivery to the stranger and makes such acts contemporaneous, *i. e.*, makes such tradition to a stranger and the subsequent assent contemporaneous.  The deed only takes effect from the delivery, and such delivery when made to a stranger for the grantee's use is only complete on acceptance by the grantee.  If it is complete on delivery to the stranger, though the assent is not given until a subsequent period, it must be because by some legal rule the assent is made to relate back to the time of such delivery, and become a part of it.  If the delivery is not complete until the day when assent is given, then the delivery is not accomplished until such latter date.  The title then must be in the grantor until assent given, and he has perfect dominion over it until his grantee has signified his assent.  The assent can get back to the date of delivery to the stranger only by virtue of the doctrine of relation, which is a fiction of law in which there is always equity, never working an injury, and which is never permitted or applied so as to do wrong to third persons.  (Broom's Legal Maxims, *"In fictione juris,"* etc. 128, and cases cited; *Case* v. *De Goes*, 3 Caines, 261; *Jackson* v. *Bard*, 4 Johns. 230; *Johnson* v. *Smith*, 2 Burr. 963; 3 Rep. 30 *a*; 10 Rep. 40; *Liford's Case*, 11 Rep. 51; *Mostyn* v. *Fabrigas*, Cowp. 177; *A. G.* v. *Kent*, 1 Hurl. & C. 28; 3 Blackst. Com. 43; *Goodsell* v. *Stinson*, 7 Blackf. 439; *Hulick* v. *Scovil*, 4 Gilm. 190.)  A fiction of the law "is defined to be a legal assumption that a thing is true which is either not true, or which is as probably false as true; the rule on this subject being that the court will not endure that a mere form or fiction of law, introduced for the sake of justice, should work a wrong contrary to the real truth and substance of the thing."  (Per Lord Mansfield, C. J., *John-*

*son* v. *Smith,* 2 Burr. 962; Broom's Legal Maxims, 128.) That a person will accept a deed beneficial to himself when delivered to a stranger for his use, is a good reason as between grantor and grantee to apply the fiction of relation. But certainly where it affects the rights of a third person, there is no sufficient ground for invoking it. The rule is well stated in *Goodsell* v. *Stinson, supra,* in the following words: "The delivery of a deed is an essential requisite to its validity, and it is from the delivery that the deed takes effect. A deed may be delivered to a third person, even a stranger, for the benefit of the grantee, and if he afterwards assent to the act, the deed will take effect from the date of its delivery, unless the rights of third persons should be affected by it. In that event the doctrine of relation would not apply, for it is a general rule that it shall not be permitted to apply so as to do wrong to strangers; as between the parties to the deed, it may be adopted for the advancement of justice." (7 Blackf. 439.)

If the factor of an intervening right existed in *Doe ex dem. Garnons* v. *Knight,* 5 Barn. & C. 671, it was not noticed by the court. The court discussed the points in that case as arising between grantor and grantee, or those standing in their positions. The authorities cited and commented on show this. In fact, from the remark made at the close of the opinion in that case, we infer that the court did not intend to decide this question. The remark referred to is this: "Should he [referring to the defendant] be able hereafter to show that his mortgage is entitled to a preference, the present verdict will be no bar to his claim."

We do not understand, as contended by appellant's counsel, that the court in *Hastings* v. *Vaughn,* 5 Cal. 315, approved of everything in *Doe* v. *Knight.* It only concurred with it in the point that the intention of the grantor on the issue of delivery was for the jury to decide, and that delivery is a question of fact. The remarks in the opinion that "many authorities are cited, and much good reasoning brought out in support of the position that a deed will be operative although never parted with by the person who executed it, in other words, that delivery depends more upon intention than upon the mode of fulfilling the intention," do not indicate that the court approved

all that was laid down in the cause it was referring to. But as to what is quoted above, we have this to say, that we have met with no case either in *Doe* v. *Knight* or elsewhere, which holds that a delivery of a deed has been held complete, where the grantor has never parted with it. As we understand the cases, the grantor must have parted with all control over the deed, to make delivery in any case, and especially when delivery is made to a stranger for a third person. (*Hulick* v. *Scovil*, 4 Gilm. 176.) After a complete delivery, he may retain the deed in his possession as mere custodian for the grantee; but in every other sense he has parted with it.

We find no error in the conclusion reached by the court below, that the paper purporting to be a conveyance from W. W. Chipman to E. S. Chipman was void for want of a delivery thereof, as against the title of Hibberd and the parties claiming under him.

In our view, there was no assent to or acceptance by E. S. Chipman of the paper just mentioned until the lien of the judgment in *Hibberd* v. *Chipman and Aughinbaugh* had attached. That being the case, the plaintiffs claiming under the judgment sale and sheriff's deed had the better right, unless for other reasons urged by appellants the sale by the sheriff and his deed did not pass to the purchaser at such sale, a title superior to that of E. S. Chipman, and of defendants claiming under him, which we will proceed to consider.

The judgment under which plaintiffs claim became a lien on the land in suit, as we have seen, on the 1st day of March, 1855. An execution in due form of law directed to the sheriff of the proper county, was issued on this judgment on the 22d day of October, 1856. This writ commanded the sheriff to satisfy the judgment named in it, in case sufficient personal property of the defendants could not be found, out of the real property in the county of Alameda belonging to defendants on the day when the judgment was docketed. This, as we have seen, was on the 1st of March, 1855. The sheriff advertised the land for sale on this execution. The sale under this advertisement was to take place on the 17th day of November, 1856. On that day it was sold, and Hibberd, who was the highest bidder therefor, became the purchaser, and afterwards regularly received the sheriff's deed.

This deed recites the writ of execution and the judgment on which it was issued, a levy under the writ on the right, title, and interest of defendants had by them on the 1st day of March, 1855, in the lands described in it, advertisement and sale of such lands on the 17th day of November, 1856, to James F. Hibberd, etc., etc.

It appears that the sheriff, in his advertisement of the sale under the writ of execution, stated that he had seized and taken under the writ all the right, etc., of the defendants in and to the lands levied on, had by them on the 1st day of March, 1856; that in the certificate of sale executed to Hibberd, after reciting the judgment, execution, and levy, the sheriff stated that he had levied on the right, etc., had by defendants on the 1st day of March, 1856; that in his return on the writ he stated the same as to the date of the levy on the right, etc., of defendants.

It is contended here by appellants that the sheriff's deed is void as to defendants, and conveys no right anterior to the right of defendants; that, conceding that such right of defendants vested on the 30th of June, 1855, that the levy of the writ having been made on the title held by W. W. Chipman and Gideon Aughinbaugh on the 1st day of October, 1856, that the title derived by plaintiffs under the sheriff's deed did not go behind that day, and was, therefore, subsequent and inferior to the title of defendants in this cause. The title of the purchaser at sheriff's sale does not depend on his return to the writ. This has been frequently held. (*Ritter* v. *Scannell*, 11 Cal. 238; 70 Am. Dec. 775; *Hunt* v. *Loucks*, 38 Cal. 382; *Blood* v. *Light*, 38 Cal. 653; *Wilson* v. *Madison*, 55 Cal. 8.) Whether the return be good or bad, sufficient or insufficient, is a matter of no moment to the purchaser, for his title in no manner depends on it. (*Ritter* v. *Scannell, supra.*) In making out his title the purchaser may use the return, if there is one which is satisfactory to him, but in no case is he required to use or introduce it, and in no case can he be prejudiced by it, whatever be its terms. It is only requisite that he show a sale, and the authority of the officer to make it. The deed shows the former, and the judgment and execution prove the latter. The law is well stated in *Blood* v. *Light,* by Sanderson, J., speaking for the court, as follows:—

"He is bound to see that there is a judgment which is not *void*, and an execution which is regular upon its face; but as to all the acts of the officer under the execution which precede the sale, he may rely upon the legal presumption that they have been duly performed; that the officer has found no personal property; that he has seized upon the land which he is about to sell; and that he has advertised the sale as required by law. (*Cloud* v. *El Dorado Co.* 12 Cal. 133; *Clark* v. *Lockwood*, 21 Cal. 224; *Moore* v. *Martin*, 38 Cal. 428.) The statute is directory so far as it deals with the manner in which the officer is required to execute the writ (*Smith* v. *Randall*, 6 Cal. 50; *Webber* v. *Cox*, 6 Mon. 110; *Hayden* v. *Dunlap*, 3 Bibb, 216), and hence, although his failure to comply with its provisions may be sufficient cause to set the sale aside, upon the application of the parties to the writ, yet it does not render the sale void. (*San Francisco* v. *Pixley*, 21 Cal. 59.) It is the policy of the law to uphold judicial sales, when collaterally attacked, by securing purchasers, as far as possible without prejudice to others, against risk. Such a course is to the interest of both creditors and debtors, who would be alike prejudiced by a rule which would tend to the insecurity of titles obtained in that way. It is no obstacle to this policy to require the purchaser to take the risk of the officer's authority to sell, for that can be readily determined by an inspection of the judgment and execution under which he is acting; but to require him to ascertain and determine whether the officer has left a copy of the writ with the occupant of the land; or, if there was no occupant, that he has posted a copy upon the premises, and filed another copy, with a description of the land, with the county recorder, in case where the land stands on the records of the county in the name of the defendant in the execution; or, when it stands upon the records in the name of some other person, that he has left with such person, or his agent, a copy of the writ and a notice that the land (describing it), and any interest which the defendant has therein, has been seized under the writ, and that he has filed a copy of the writ and notice with the recorder of the county, and left another copy with the occupant of the land; or, if there was no occupant, that he has posted a copy in a conspicuous place on the land; that the judgment debtor has no personal

property; that the land is being sold in appropriate parcels; or that it is being sold according to the directions of the judgment debtor; and that it has been advertised according to law, would amount almost to an · inhibition upon judicial sales, and tend greatly to the sacrifice of the land, to the prejudice of all the parties concerned. Guided by these considerations, the legislature has nowhere provided that the validity of a purchaser's title shall depend upon the manner in which the officer has performed his duty; but on the contrary, without any limitation or qualification to that effect, has provided that, 'upon a sale of real property, the purchaser shall be substituted to, and acquire all the right, title, interest, and claim of the judgment debtor thereto.'" (§ 299.) "Whether the officer has performed his duty lies between him and the parties to the writ, and the purchaser cannot be prejudiced by his remissness or neglect." (38 Cal. 654, 655.)

In the case of a sale of land by the sheriff, the title dates from the lien of the judgment as against third persons, and not from the date of any real or pretended statutory levy. (*Blood* v. *Light*, 38 Cal. 657.) The title acquired by the deed of the officer relates back to the date of the judgment lien, for the judgment is the source of his authority, and by such relation the last act is carried back to the first in making out the title, and takes priority as of the date of the first, which is the day of the judgment lien. (*Landes* v. *Brant*, 10 How. 348.) Neither E. S. Chipman nor defendants here are third persons. They stand in no more favorable position than the defendants in the judgment. They are purchasers here from one of the latter, with full opportunity to inspect the judgment from which plaintiffs deraign their title. They were bound to know and to yield to the execution and sheriff's deed. Of these they were bound to take cognizance as a legal sequence of the judgment and its lien. We cannot concur in the contention of defendants. The acts of the sheriff referred to are mere irregularities, which did not affect the title of the purchaser at the sale of the sheriff.

We find no error in the record.

The judgment should be affirmed, and it is so ordered.

ROSS, J., MYRICK, J., and McKINSTRY, J., concurred.