## McGRATH et al. v. HYDE.*

### No. 11,666; June 14, 1889.

#### 21 Pac. 948.

**Deed—Delivery by Husband to Wife.**—A husband signed and acknowledged a deed conveying land to his wife, stating to the notary before whom he acknowledged it that he wished to give the property to her. The wife testified that her husband put the deed on the table, told her what it was, and directed her to put it away, saying that it could be recorded at any time. She stated that she put the deed in the trunk, and at another time said that her husband did so. Their daughter corroborated her mother, and stated that her father said he would put it away for her mother, and that she could record it any time. An inmate of the house stated that she was in position to have heard any such conversation, if it had occurred, but that she neither saw nor heard anything of the deed, but her testimony was vague as to the continuousness of her presence. Held, that the deed was delivered.

APPEAL from Superior Court, City and County of San Francisco; John F. Finn, Judge.

Action by Honora McGrath and James McGrath, her husband, to cancel a deed made by Michael Hyde to Ellen Hyde, his wife, the female plaintiff being the daughter and heir of Michael Hyde, who died after the deed was made. Judgment for plaintiffs, and defendant appeals.

*For subsequent opinion in bank, see 81 Cal. 38, 22 Pac. 293.

E. B. Holladay and S. W. Holladay (Craig & Meredith of counsel) for appellant; M. Cooney for respondents.

HAYNE, C.—This was a suit to cancel a deed from a husband to his wife, upon the grounds that the grantor had not sufficient capacity to make it, and that it was not delivered. The trial court found that the grantor had capacity to make it, but that it was not delivered, and rendered judgment for the plaintiffs. The defendant appeals. We think that the finding that the deed was not delivered is not sustained by the evidence. The notary who drew the deed testified that he did so at the request of the grantor, without the intervention of any other party; that the grantor instructed him to draw the deed, and signed and acknowledged it before him, stating at the time that "he wished to give the property to his wife." The wife testifies that her husband came home one day, when the following occurred: "He puts a deed ·on the table, and I says to him, 'What is this?' and he says, 'It is a deed to you.' He says: 'Deeding the West Mission street property all to you—especially to you.' So I picked it up, and I looked at the date, and I began to cry. I thought then sure he was going to die, because he deeded the property to me, and I called Mary's attention at the same time, and I said: 'Here, Mamie, look at this'; and then he says: 'It is not recorded, but it will do,' he says, 'any time, and say nothing now,' he said, 'but just put it away.' " The daughter testifies as follows: "I just came home from town, and father and mother were sitting at the table, and this was before them, and my mother was in tears, and I asked her what was the matter, and she said that father was just after deeding the property to her, and with that my father got up, and walked away, and I said: 'What of it?' Well, she said: 'Oh, he is going to die'; and I said: 'No; that is no reason he is going to die; it is best he should do it now.' Question. What was the position of the deed? Answer. It was lying on the table between them. Q. Did your father say anything? A. He said, after we had got through talking, he said: 'Give it to me, and I will put it in the trunk, and there is no need of recording it until afterward'; and he said: 'You can have it recorded at any time.' " The memory of the mother was at fault as to who put the deed in the trunk. In one place she

says that she did, and in another place that her husband did. The daughter says that her father put it in the trunk, and we assume that such was the fact. The only evidence against this was the testimony of one Maggie Murphy, who lived in the house, and testified that she saw the parties "every day at that time," and was in a position to hear if there had been much conversation, and that she neither saw nor heard anything of the deed at the time. But the testimony of this witness is so vague as to the continuousness of her presence, and as to why she "was in a position" to hear and see, that we think it amounts to nothing. From the whole testimony, we think that it appears without substantial conflict that the husband instructed the notary to draw the deed, signed and acknowledged it, stating that he intended to give the property to his wife; went home and threw it on the table, saying, in substance: "There is a deed of that property to you; put it away"; that the wife took it up, and looked at it, and, after some conversation to the effect that it was not necessary to have it recorded then, the husband put it away in his trunk. It further appears that the husband did not want it recorded then, alleging as a reason that he wished to make some improvements on the property, which we think shows nothing more than that he wished to appear to be still the owner of the property, so far as outsiders were concerned.

We think that this shows a delivery of the deed. Delivery is a question of intention: Hibberd v. Smith, 67 Cal. 554, 56 Am. Rep. 726, 4 Pac. 473, 8 Pac. 46. The term signifies any manifestation whereby the grantor makes known his intention that the deed is complete and is to take effect. It is not necessary that there should be any actual manual transfer of the instrument. In Touchstone it is said: "Delivery is either actual, i. e., by doing something and saying nothing, or else verbal, i. e., by saying something and doing nothing, or it may be both; and either of these may make a good delivery and a perfect deed": 1 Shep. Touch. *57. And it is well settled that no particular form of words is necessary to manifest the intention. In the language of Ryan, C. J., in Bogie v. Bogie, 35 Wis. 667, "there is no set ritual of delivery; that when a deed is executed, and the minds of the parties to it meet, expressly or tacitly, in the purpose to give it present effect, the deed is validly delivered; and that such meeting of minds

may be gathered from acts or signs, words or silence, in multitudinous variety of circumstances.'' Now, we think that if, after throwing the deed on the table, and saying to the grantee, ''There is a deed of the West Mission street property to you; put it away,'' the grantor had done nothing further, but had left the paper there, it would have been entirely clear that there was a perfect delivery: Shelton's Case, Cro. Eliz. 7; Souverbye v. Arden, 1 Johns. Ch. (N. Y.) *255. Was this manifestation of intention, which was complete and sufficient of itself, overcome by the fact that the grantor took the deed and put it in his trunk? We think not. The retention of the deed by the grantor is not conclusive. There may be a good delivery, although the grantor has never parted with the possession of the instrument: Hastings v. Vaughn, 5 Cal. 318; Ruckman v. Ruckman, 32 N. J. Eq. 261; Otis v. Spencer, 102 Ill. 627, 628, 40 Am. Rep. 617; Newton v. Bealer, 41 Iowa, 334; Scrugham v. Wood, 15 Wend. (N. Y.) 546, 30 Am. Dec. 75; Bunn v. Winthrop, 1 Johns. Ch. *336; Souverbye v. Arden, 1 Johns. Ch. *240; Garnons v. Knight, 5 Barn. & C. 692; 4 Kent Comm. 455. The case of Folly v. Vantuyl, 9 N. J. L. 153, is very like the present. There the obligor executed a bond, and, holding it in his hand, said to the obligee: ''Here is your deed; what shall I do with it?'' and added: ''I will take care of it for you''; and had put it in his trunk. Held, a sufficient delivery: See, also, Otis v. Spencer, 102 Ill. 622, 40 Am. Rep. 617. In addition to the above it is to be remembered that in cases of a family settlement like the present the law presumes more in favor of delivery than in other cases: Bryan v. Wash, 2 Gilm. (Ill.) 568; Reed v. Douthit, 62 Ill. 352. Taking all the circumstances together, we think that the intention to pass the title was complete and that the retention of the deed by the grantor was merely for its safekeeping, which, considering the relation of the parties, was quite natural and proper. The other matters do not require special notice. We therefore advise that the judgment be reversed and the cause remanded for a new trial.

We concur: Foote, C.; Gibson, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is reversed and cause remanded for a new trial.