## HOTCHKISS *v.* OLMSTEAD.

SLANDER.—*Charge of Forgery.—Attempt to Obtain Money by False Pretences.* The plaintiff, having executed a note to the defendant, November 30th, 1864, and paid one year's interest, after a year had passed executed a mortgage to secure the payment of the note, and some four years later, on discharging the note and mortgage, which were surrendered to the plaintiff, the interest from the date of the note was, by mistake, included, and no credit given for the one year's interest paid. The plaintiff called the attention of the defendant to the mistake afterward, and pointed out the words in the mortgage referring to the note, " Interest paid to Nov. 30th, 1865." The plaintiff filed a complaint, which, after reciting these facts, and averring that the purpose of defendant was to cause it to be believed, and that the hearers so understood, that the plaintiff had been and was guilty of forgery, and of making use of false pretence, to obtain money, charged, with proper innuendo, that defendant had uttered and published of him the following false and slanderous words: " You forged it, inserted it, put it in. You wrote that clause in it. I would swear that that line in the mortgage was not in the mortgage when I gave it to you yesterday, and you put it in. You altered the mortgage, changed the mortgage, put that line in the mortgage, inserted that line, put the credit in, and you are a forger and committed forgery;" and also: " He committed forgery, is a forger, is guilty of forgery. There is something here that I don't understand; this line has been put here; or at least if I was called on to swear, I would swear that I read the whole of the mortgage over very

Hotchkiss *v.* Olmstead.

carefully, and I did not read that. I let Hotchkiss" (the plaintiff) "have the mortgage once, and I never noticed that until after he brought it back. It is his handwriting. I told him so. I suppose he says he is going to sue me for it, but it is my belief. He can't hurt a person for his belief. Hotchkiss is so slippery I have had to watch him. He cheated me out of some money, which he positively agreed to pay, and I am not going to let him cheat me any more. I am positive this was not here when I gave him the mortgage. He put it there; it is his handwriting; I told him so; he can't hurt me for that. He can't hurt a man for his opinion, unless he says he can prove it. I have never said I could prove it. He must have put that line in the mortgage. I am certain it was not there when I gave him the mortgage."

*Held*, that the entry charged, on the mortgage, had the force and effect of a receipt for so much money, and, although surrendered, was a valid instrument as such receipt, and capable of being forged, and the paragraph showed a charge by defendant against plaintiff of forgery. It did not state a charge of obtaining money by false pretences. The attempt charged was not a crime.

SAME.—A second paragraph charged a conversation in respect to the same transaction, but it alleged the alteration was made before execution and delivery of the mortgage, and, therefore, no forgery could have been then committed.

APPEAL from the Switzerland Circuit Court.

BUSKIRK, J.—The only question which is presented by the record in this cause arises upon the action of the court in sustaining a demurrer to the first and second paragraphs of the complaint.

This was an action of slander, brought by the appellant against the appellee. The complaint was in two paragraphs. The appellee demurred separately to each paragraph. The demurrer was sustained, and the appellant refusing to amend, judgment was rendered on the demurrer for the appellee. The appellant excepted, and brings the case here to obtain a reversal of the judgment of the court below in sustaining the demurrer to the complaint. To make the ruling of the court below and the decision of this court intelligible, it will be necessary to reproduce each paragraph of the complaint.

The complaint was in these words: 1. The plaintiff complains of the defendant, and says that on the 30th day of November, 1864, the plaintiff executed to the defendant the promissory note, a copy of which is filed herewith, and having paid thereon the interest for one year, he did, on the 15th day of December, 1865, execute to said defendant a mortgage, a

copy of which is also filed herewith, to secure the payment of said note; and afterward, on the — day of ——, 1869, the said plaintiff being about to pay off said note and mortgage, by mistake the interest thereon was computed without deducting the said one year's interest previously paid by the said plaintiff to the defendant on said note; and the said note and mortgage were then delivered up to the plaintiff, and plaintiff paid to said defendant the full amount of said note and mortgage, without deducting or being allowed for said one year's interest so theretofore paid by him to said defendant, all of which was well known to the said defendant; and afterward plaintiff discovered the said mistake, and pointed out to said defendant that part of said mortgage which, in reciting the said note, etc., says, "interest paid to November 30th, 1865;" wherefore, the said defendant then, and afterward, to cause it to be believed that the plaintiff had been, and was, guilty of forgery, and of making use of false pretences to obtain from said defendant the said amount so overpaid to him in satisfaction of said note and mortgage, in speaking of and concerning said note and mortgage, and of and concerning the above recited clause thereof, and of and concerning the said plaintiff, and in order to cause it to be believed that said plaintiff had been, and was, guilty of forgery and of false pretence as aforesaid, in the presence and hearing of divers persons spoke and published the following false and slanderous words, to wit: "You" (meaning the plaintiff) "forged it, inserted it, put it in; you" (meaning the plaintiff) "wrote that clause in it. I" (meaning the defendant) "would swear that that line in the mortgage was not in the mortgage when I gave it to you yesterday, and you put in; you" (meaning the plaintiff) "altered the mortgage, changed the mortgage, put that line in the mortgage, inserted that line, put the credit in; and you are a forger and committed forgery. He" (the plaintiff meaning) "committed forgery; is a forger; is guilty of forgery. There is something here that I don't understand; this line has been put here, or, at least, if I was called on to swear, I would swear that I read the

Hotchkiss *v*. Olmstead.

whole of the mortgage over very carefully, and I did not read that. I let Hotchkiss" (meaning plaintiff) "have the mortgage once, and I never noticed that until after he brought it back. It is his handwriting; I told him so. I suppose he says he is going to sue me for it, but it is my belief; he can't hurt a person for his belief. Hotchkiss" (plaintiff meaning) "is so slippery I have had to watch him; he cheated me out of some money, which he positively agreed to pay, and I am not going to let him cheat me any more. I am positive this" (meaning the said sentence in said mortgage) "was not here when I gave him the mortgage; he put it there; it is his handwriting; I told him so; he can't hurt me for that; he can't hurt a man for his opinion, unless he says he can prove it; I have never said I could prove it. He" (meaning the plaintiff) "must have put that line in the mortgage" (meaning the line relating to said credit); "I am certain it was not there when I gave him the mortgage." Thereby meaning and intending to charge that the plaintiff had committed forgery, and had been guilty of attempting to obtain money by false pretence, and so said words were understood by the hearers.

By which the plaintiff has sustained damages to the amount of ten thousand dollars, for which he brings suit.

The plaintiff, for second paragraph of his complaint, says, that on the 30th day of November, 1864, the plaintiff executed to the defendant the promissory note, a copy of which is filed herewith, and afterward he paid thereon the interest for one year, and afterward, on the 15th day of December, 1865, the parties to said note agreed that if the plaintiff would execute a mortgage to said defendant for the payment of said note, the said defendant would extend the time of payment thereof, and accordingly the said plaintiff, with his wife, signed the mortgage, a copy of which is filed herewith, and there executed the same to the defendant, who approved the same, and expressed himself satisfied therewith, and the plaintiff then took the same to one John Kerr, Esq., a justice of the peace, that plaintiff and his wife might

acknowledge the same, which they accordingly did, and when the acknowledgement thereof had been certified by said justice of the peace, the said mortgage was delivered by plaintiff to said defendant; and afterward, on the —— day of ————, 1869, the plaintiff paid off said note and mortgage in full, without deducting the said one year's interest theretofore paid thereon; and the said note and mortgage were then, or afterward, surrendered up to the plaintiff; and afterward the plaintiff discovered the said mistake and demanded the correction thereof from defendant, and pointed out to the said defendant that part of said mortgage which recites the payment of said interest, to wit, "interest paid to November 30th, 1865." The said defendant, in order to cause it to be believed that said plaintiff was guilty of forgery, and of publishing a forged instrument as genuine, and of making use of false pretences to induce the said defendant to accept said mortgage and surrender up the previous mortgage mentioned in said mortgage, a copy of which is filed herewith, and to induce said defendant to extend the time of payment of said note, in speaking of and concerning said note and mortgage, and of and concerning said extension of payment, and of and concerning the said clause in said mortgage above recited, and of and concerning said plaintiff, spoke and published to divers persons the following false and slanderous words, to wit: "If I" (meaning defendant) "was called on to swear, I would swear that I read the whole of the mortgage over very carefully, and I did not read that. I" (meaning the defendant) "let Hotchkiss" (meaning the plaintiff) "have the mortgage once, and I never noticed that until after he brought it back. It is his handwriting; I told him so. I suppose he says that he is going to sue me for it, but it is my belief; he can't hurt a man for his belief. Hotchkiss" (plaintiff meaning) "is so slippery I have had to watch him; he cheated me out of some money once, which he positively agreed to pay, and I am not going to let him cheat me any more. I am positive this" (meaning the sentence above recited) "was not there when I gave him the mortgage; he

put it there; it is his handwriting. He can't hurt me for that; he can't hurt a man for his opinion, unless he says he can prove it; I have never said I could prove it. He altered the mortgage; he inserted that sentence; he defrauded me by changing the mortgage while he had it, and by inducing me to accept it, supposing that it remained as it was when I first saw it, and before he took it away to acknowledge it." By which said slanderous charges, the said defendant meant and intended to charge said plaintiff with forgery, with uttering as genuine a false and forged instrument, and with obtaining the release of said other mortgage, and the extension of the day of payment of said debt by false and fraudulent pretences, and so said words were understood by those who heard them; wherefore plaintiff demands judgment for ten thousand dollars, as in the orginal complaint.

The only point in the case is as to the sufficiency of the complaint.

By the first paragraph it is alleged that in speaking of the plaintiff, and of and concerning a note and mortgage given to the defendant by the plaintiff, the defendant, after the note and mortgage had been paid off and surrendered up, said the plaintiff had inserted a clause of payment of interest for one year in the mortgage; that plaintiff had forged it; that plaintiff was a forger, and was guilty of forgery.

The second paragraph is similar, except that it fixes the time of the alteration in the mortgage before it was signed and acknowledged by plaintiff, and by him delivered to defendant, and that the plaintiff had been guilty of obtaining money by false pretences, by uttering as true and genuine the said instrument by him so altered and forged. By the innuendo in each paragraph it is alleged that the defendant meant to charge the plaintiff with the crimes of forgery and obtaining money by false pretences.

Section 30, 2 G. & H. 446, defines forgery thus: "Every person who shall falsely make or assist to make, deface, destroy, alter, forge, or counterfeit, or cause to be falsely

made, defaced, destroyed, altered, forged or counterfeited," then follows a description of the instruments that may be forged, " or any person who shall utter, or publish as true any such instrument, knowing the same to be false, defaced, altered, forged, or counterfeited with intent to defraud any person, body politic or corporate, shall be deemed guilty of forgery."

Are the facts stated in the first paragraph of the complaint sufficient to constitute a good cause of action for slander? The solution of this question depends upon whether the words spoken by the defendant of and concerning the plaintiff, as they are set out in the said paragraph, amounted to a valid charge of a felony against the plaintiff. The innuendo charges that the defendant then and thereby intended to charge the plaintiff with having been guilty of the crimes of forgery and obtaining money by false pretences. We will first inquire whether the crime of forgery was charged, within the meaning of our statute creating and defining that crime, as above quoted. To say of a person that he is a forger, or that he had committed forgery, or that he had forged an instrument that was the subject of forgery, or that he had uttered and published as true any such instrument, knowing the same to be false, defaced, altered, forged, or counterfeited, with intent to defraud any person, body politic or corporate, standing alone without explanation or qualification, is *per se* actionable, for it is charging the person with the crime of forgery, and, if true, it would subject the person charged to the pains and penalties inflicted upon persons guilty of such crime. But where words, in themselves actionable, are spoken of a subject-matter which, in itself, is not a crime, or where there are circumstances given by the speaker, or known to the hearers, which show that no crime had been in fact committed, no action can be maintained for the speaking of the words. *Abrams* v. *Smith*, 8 Blackf. 95; *Carmichael* v. *Shiel*, 21 Ind. 66; *Van Rensselaer* v. *Dole*, 1 Johns. Cas. 239; *Thompson* v. *Bernard*, 1 Campb. 48; *Dexter* v. *Taber*, 12 Johns. 239; Townsh. Slander, 142, sec. 144.

Hotchkiss *v.* Olmstead.

It makes no difference what may be stated in the innuendo as to the intent of the defendant, or the language used; the meaning and intent must be determined from the language used, in connection with the extrinsic facts alleged; and if, taken altogether, a felony is not charged thereby, then the words are not *per se* actionable, no matter what the words are. To say of a man, he is a murderer, he killed A. in self-defence, would not import a charge of murder; though the direct charge is made, yet the accompanying explanation shows that such direct charge could neither be intended nor understood to import the crime of murder.

In the case under consideration, the complaint alleges that plaintiff had made a mortgage to defendant to secure the payment of a note; that he had paid off the note and mortgage, and that they had been surrendered up as satisfied; that by mistake the plaintiff had paid one year's interest, which had been paid before the mortgage was given; that the plaintiff had applied to the defendant to refund that interest; that in speaking of the transaction, the defendant had said of the plaintiff that he had inserted that clause in the mortgage after it had been paid off and surrendered up as satisfied, and had thereby committed forgery.

The question is squarely raised, whether a forgery can be committed by changing and altering a note or mortgage that has been paid off and surrendered up as satisfied.

The law is thus stated by Bishop: "And though a promissory note or bill of exchange, after being paid, is *functus officio*, and no note or bill, yet, if this does not appear on its face, a forgery may be committed by altering it. Likewise, it is no defence to a charge of forging bank bills, that the bank never issued bills of the particular denomination forged." 2 Bishop Cr. Law, sec. 508.

The same author, in section 511, says: "Therefore the general doctrine is, that the invalidity of an instrument must appear on its face, if the defendant would avail himself of this defect on a charge of forgery. In still other words, the forged

Vol. XXXVII.—6

instrument, to be the foundation for an indictment, must appear on its face to be good and valid for the purpose for which it was created."

The case of *Drummond* v. *Leslie,* 5 Blackf. 453, is very much in point. That was an action for slander. The material facts were these: The plaintiff had been indebted to defendant for rent of a house; that plaintiff had paid the same and taken the receipt of defendant therefor; that the plaintiff had used and uttered the said receipt against the defendant as true and as evidence of such payment; that the defendant had, in speaking of the plaintiff, and of and concerning the said receipt, charged that the receipt had been forged, but he, the defendant, did not say who forged it.

This court say: "The defendant contends that the words are not actionable, and that the judgment should, therefore, have been arrested; but we are of a different opinion. There is not, it is true, a directly affirmative charge that the plaintiff had committed forgery; nor was that necessary. If the words were calculated to induce the hearers to suspect that the plaintiff was guilty of the crime, they were actionable."

The entry made on the mortgage of the payment of interest had the force and effect of a receipt for that much money as paid by plaintiff to the defendant. The plaintiff uttered the same as true and as evidence of such payment. The mortgage, although paid and surrendered up, was a valid instrument as evidence of such payment, and to that extent was capable of being forged.

We are next to inquire whether the facts stated constituted a valid charge of obtaining money by false pretences. That crime is thus defined by our statute: "If any person, with intent to defraud another, shall designedly, by color of any false token or writing, or any false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, transfer, note, bond or receipt, or thing of value; such person shall, upon conviction thereof, be imprisoned in the state's prison not less than two nor

Hotchkiss *v.* Olmstead.

more than seven years, and fined not exceeding double the value of the property so obtained." 2 G. & H. 445, sec. 27.

To constitute the above crime, it is essential that the person charged should have actually obtained the signature of some person to a written instrument, or obtained money or some thing of value by the means and in the manner described in the above section. The statute does not make the attempt to obtain a signature, or money, or some article of value a crime. The complaint does not allege that the plaintiff obtained any money from the defendant, but all the facts show that he demanded the repayment of the one year's interest, but that the defendant refused to pay the money, and that nothing was received. We are of the opinion that the facts stated in the first paragraph of the complaint constituted a valid charge of forgery, but did not amount to a valid charge of obtaining money by false pretences, and there being one valid charge, the court erred in sustaining the demurrer.

The second paragraph alleges a conversation in respect to the same transaction as that described and set forth in the first, but it differs radically from the first, in this, that it alleges that the alteration was made before the mortgage was signed and acknowledged by the plaintiff and delivered to the defendant.

It was not the mortgage or deed of the plaintiff until he had signed and delivered it, and no alteration he could make on it before signing and delivering it could amount to a forgery. The paper, until signed and delivered, was his own, and under his own control, and he could make any alteration before its execution that he saw proper. The mortgagee was not bound to accept it if it had been altered, but if he did accept of it, it was not a forged and altered instrument, for it was the identical instrument, the same identical mortgage that had been signed and delivered, and in the precise condition that it was when it became a mortgage by the signing and delivery on the part of the mortgagor, and the acceptance by the mortgagee.

If the mortgage was delivered to the plaintiff, to be by him signed, acknowledged, and delivered to the defendant, and if the plaintiff, before its execution, changed and altered the instrument, without the knowledge and consent of the mortgagee, who accepted of the same without knowing of the alteration, then the plaintiff was guilty of a fraud and a moral wrong, but not of the crime of forgery.

But it is claimed by the appellant that the appellee obtained the acceptance of the second mortgage, and the extension of time on the debt, by false pretences. The point relied on is, that the mortgage was drawn up, read over to, and approved and signed by, the mortgagor, and was then delivered to him to obtain the signature of his wife, and to acknowledge the same before a justice of the peace, and that before it was signed by his wife, and acknowledged by him and his wife, the alteration had been made, and that he had thereby obtained an extension of time, which was something of value to him.

We do not think that this view betters the condition of the appellant. It did not become a mortgage until it was signed, acknowledged, and delivered. The signature of the mortgagor, without its delivery, did not give it the force and effect of an executed instrument. The acknowledgement of the mortgage was not essential to its validity, but its delivery was. To constitute a delivery, there must be an intention to part with the control over the instrument, and place it under the power of the grantee, or some one for his use. See tit. DELIVERY, 1 Abbott's Ind. Dig. 379, where the decisions on this point are collected.

Besides, the extension of time was not obtained by the alteration of the mortgage, for the mortgagee had agreed to extend the time before the alteration was alleged to have been made. Nor did the alteration tend to produce that result, for it is manifest, from the whole case, that the mortgagee would have refused to accept the mortgage if he had known of the alleged alteration.

In our opinion, the court committed no error in sustaining the demurrer to the second paragraph of the complaint.

But for the error of the court in sustaining the demurrer to the first paragraph of the complaint, the judgment must be reversed.

The judgment is reversed, with costs, and the cause is remanded, with directions to the court below to overrule the demurrer to the first paragraph of the complaint, and for further proceedings in accordance with this opinion.

DOWNEY, J., having been engaged as counsel, was absent.

*A. C. Downey* and *S. R. Downey*, for appellant.

