(72 N. W. Rep. 1085.)

---

## A. L. PLUMMER *vs.* A. E. KELLY.

Opinion filed November 3rd, 1897.

**Specific Performance—Sale of Real Estate.**

> Under the facts held forth in the opinion, *held*, that defendant was entitled to the specific performance of a contract for the sale to her of real property.

Appeal from District Court, Traill County; *McConnell*, J.

Action by A. L. Plummer against A. E. Kelly, and by A. E. Kelly against A. L. Plummer. The actions were consolidated, and judgment rendered for A. E. Kelly. Plummer appeals.

Modified.

*Carmody & Leslie*, for appellant.

*P. G. Swenson* and *J. F. Selby*, for respondent.

CORLISS, C. J. Two actions have been consolidated and tried as one. We will speak of the parties according to their positions as plaintiff and defendant in the first suit, in which A. L. Plummer was plaintiff, and Mrs. Kelly was defendant. Plaintiff having failed to secure a favorable judgment in the District Court, brings the whole case before us for a new hearing. The two actions, which, by the consent of the parties, were tried as one case, were, respectively, actions to annul a contract for the sale of land, and to secure the specfic performance of such contract. The plaintiff Plummer instituted the action to have the contract canceled; and thereafter the defendant Kelly commenced an action against

Plummer to compel the specific performance of such contract by him. The only question in either case was the right of the defendant Kelly to a decree directing Plummer to convey the land to her on making payment of the balance due under the contract. It was therefore entirely proper that the issues in these two suits should all be tried at the same time. The contract of which Mrs. Kelly seeks the specific performance was entered into between her and Plummer on the 13th of April, 1891, and, omitting formal parts, is in the following language: "This agreement, made and entered into this thirteenth day of April, A. D. 1891, by and between A. L. Plummer, of Hillsboro, Traill County, North Dakota, of the first part, and Mrs. A. E. Kelly, of Portland, Traill County, North Dakota, of the second part, witnesseth: That the said party of the first part, in consideration of the covenants and agreements of said party of the second part hereinafter contained, hereby sell and agree to convey unto said party of the second part, or her assigns, by deed of warranty, upon the prompt and full performance of said party of the second part of her part of this agreement, the following described premises, situate in the County of Traill and State of North Dakota, to-wit: West one-half of section twenty-nine, town one hundred forty-five, range fifty-three, (west ½ of section 29, town 145, range 53). And the said party of the second part, in consideration of the premises, hereby agree to pay said party of the first part, as and for the purchase price of said premises, the sum of four thousand dollars, in manner and at the times following, to-wit: According to one promissory note, dated April 13, 1891, and due April 12, 1895. Interest at 8 per cent. from June 12, 1891, payable annually, payable in one-half of all crops raised on the above tract, delivered in any elevator in Clifford, not later than December 1, 1891, and every year thereafter until the above described note and interest has been paid in full. The proceeds of all grain to be applied as follows: First, to pay all taxes or assessments that may hereafter be levied or assessed upon said premises; second, in the payment of the accrued interest, balance to be indorsed on the note. But

should default be made in the payment of said several sums of money, or any or either of them, or any part thereof; or in the payment of said interest or taxes, or any part thereof, or in any of the covenants herein to be by said party of the second part, kept or performed, then this agreement to be void, at the election of the said party of the first part, time being the essence of this agreement. And in case of default by the said party of the second part, in whole or in part, in any or either of the covenants of this agreement to be by her kept and performed, she hereby agrees, upon demand of said party of the first part, quietly and peaceably to surrender to him possession of said premises, and every part thereof; it being understood that, until default, said party of the second part is to have possession of said premises. Party of the second part further agrees to give party of the first part a chattel mortgage on her share of the crops grown on the above described tract during the years of 1891, 1892, 1893, 1894, and 1895, and every year thereafter until the above note is paid in full. It is mutually agreed that all the covenants and agreement as herein contained shall extend to and be obligatory upon the heirs, executors, administrators, and assigns of the respective parties to this contract."

Whether Mrs. Kelly delivered one-half of the grain grown on the farm during the season of 1891 is a controverted question. We can safely assume that she failed to do so, for the plaintiff did not elect to treat her rights under the agreement as in any manner affected by such default, but, on the contrary, allowed her to remain in possession of the land, and cultivate the same, during the next two seasons, and received from her, at the close of each of these seasons, a large amount of grain raised upon the land, in payment of the purchase price under the terms of the contract. Whatever breach of contract she was guilty of in 1891 was waived by plaintiff's subsequent conduct. It is undisputed that in 1892 and 1893 more than one-half of all crops grown upon the land in those two seasons, respectively, was delivered to Plummer according to the agreement. It is true that in 1893

only a small payment was made on the purchase price, not enough to pay the interest in full; but this was owing to the fact that Plummer applied the proceeds of the 1893 crop turned over to him in payment of the debts of Thomas Kelly, the husband of Mrs. Kelly, owing to him (Plummer), and to the bank with which he was connected. As a matter of fact, the grain was delivered to Plummer to be applied on the debt of Mrs. Kelly for the land, and the diversion of any portion of the proceeds to the payment of her husband's debts was an unwarranted act on the part of Plummer. Mrs. Kelly, however, is not complaining of this, and certainly Plummer cannot avail himself of this illegal use of Mrs. Kelly's money to liquidate her husband's debts, as the basis of the claim that she violated her contract in 1893. When the spring of 1894 arrived, Mrs. Kelly was in the possession of the land through her tenant, Charles W. Moran, and her right to retain that possession and operate the farm and carry out the terms of the agreement could not at that time be challenged in any court. She had faithfully kept her part of the agreement, and was preparing, through her tenant, to crop the land during the season of 1894, when the plaintiff, without right in law or morals, and on a mere suspicion that she might not put in a crop, served upon her notice that unless she furnished her tenant, Moran, with the necessary seed to sow the land within ten days, he would annul the agreement for the sale of the land. This was on the fifth of April. Mrs. Kelly, in her lease to Moran, had agreed to furnish him four horses to work the farm, but he was to furnish the seed. It appears that the horses were taken from Mrs. Kelly some time before this, and Moran refused to go on under his lease unless Mrs. Kelly would agree to supply him with the seed grain in place of the horses. While this condition existed, and some time before it could be known whether Moran would put in the crop, or whether, if he did not, Mrs. Kelly could not make other arrangements about seeding the land, the plaintiff, in defiance of the rights of Mrs. Kelly under the agreement, assumed to intermeddle with her private affairs, to dictate on what terms she

should settle with Moran for her failure to furnish him the horses, and when she should sow her farm lawfully in her possession, and held over her head the threat that, in case she did not surrender to him the management of her own business matters, he would annul the agreement. Subsequently he took possession of the land without her knowledge or consent, and rented the same to the same tenant to whom she had rented it. When the plaintiff entered upon the farm, and leased it to Moran, he was guilty of a flagrant breach of his contract. He had no more right to take possession of the land than an utter stranger. In equity, Mrs. Kelly was the owner of the land, and entitled to the possession thereof, to enable her to perform the conditions remaining for her to perform. She had in the past lived up to her agreement. In the very lease to Moran, she had stipulated that one-half of the crop was to be delivered to Plummer, according to her contract with him; and, just as she was in the act of making preparations for paying another installment of the purchase price, the plaintiff arbitrarily directed her how to run the farm, what arrangements to make with her tenant, when to furnish seed for the crop, and thereafter on an alleged suspicion that she would not crop the land during that year, took possession of the same, and from that time to the present day has acted in hostility to her rights under the agreement. The plaintiff can offer as an apology for this conduct nothing but a bare suspicion that Mrs. Kelly would not crop the land in 1894. At the time he leased the property to Moran (early in April), it was impossible to tell whether defendant would fail to seed the land during that season. Everything pointed to the probability that she would. She had made an effort to have a tenant put in the crop. It was still possible for her to make other arrangements with him, or rent the land to another, or crop it herself. Nor do we find in the contract any provision requiring her to raise a crop on this land every year. Plummer merely stipulated that she should deliver him each year one-half of all crops she might raise, leaving the acreage, which should be sown or summer-fallowed entirely to her discretion.

Had she distinctly informed him in the spring of 1894 that she did not intend to sow a kernel of grain on the farm that year, plaintiff could not have claimed that she had broken the agreement. It is true that it is urged that, through mistake, the agreement does not contain a provision that Mrs. Kelly was to put in a crop each year; that this was the understanding of the parties; and that, when the agreement was reduced to writing, this element of the contract was, through mistake, left out. But the plaintiff, when he brought his action to have the contract annulled, did not allege this error, but, on the contrary, based his action upon the agreement as written. He did not seek to have the agreement reformed; nor did he allege any fact warranting a reformation thereof. And, in his answer in the action for specific performance, he does not pray that the writing be reformed to correspond to the true agreement. Nor does the testimony of the plaintiff himself prove that there was any distinct agreement that defendant was to put in a crop every year; and there is positive evidence to the contrary. It could not in any year be known until the time for delivery should arrive whether Mrs. Kelly would fail that year to make a payment. All that Plummer was interested in was the payment of the purchase price and interest. Mrs. Kelly, so far as any one could tell, might, after failing to put in any grain whatever, pay him a larger installment of the purchase money than he would have received had she cropped all of the land. Acting upon a mere suspicion, which may have been utterly groundless, he assumed to terminate the agreement, because there was a possibility that she might break it. His conduct in taking possession under these circumstances, and leasing the land to Moran, was illegal; and he thereby violated that provision of the agreement in which he stipulated that Mrs. Kelly should have possession of the farm. She did not know that Moran was holding under Plummer, instead of under the lease from her, until late in the season of 1894. In the spring of 1895, she attempted to take possession of the farm, but was prevented by the plaintiff. A few days thereafter she made a tender to him of a sum of money

which she deemed sufficient to entitle her to a conveyance, and demanded a deed. Upon plaintiff's refusal to transfer to her the property, she brought her action for specific performance. No tender was necessary. The attitude of the plaintiff constituted a waiver of tender. That the defendant is entitled to a decree for specific performance under the facts in this case is too clear to justify argument. The claim that she made default in paying the taxes in 1891, 1892 and 1893 is answered by the fact that the agreement contemplated that they should be paid out of the one-half of the crop to be delivered to Plummer in each year. When he paid them, it was out of this fund that they were paid. The defendant was credited with only the balance after deducting the taxes.

The remaining question is: How much, under the circumstances, is defendant bound, in equity, to pay the plaintiff for a deed? The interest was paid up to February 28, 1893, and $1,000 on the principal. Thereupon the amount due November 1, 1894, (being $3,000, and the interest then due, at 8 per cent.) was $3,400. In 1894 defendant was prevented from making any payments on the contract by reason of the wrongful act of plaintiff in taking possession of the farm. Plaintiff must account to her for the reasonable value of the use and occupation of the farm during that year. The trial court found this to be $587.50. There is evidence to support this finding. Therefore we shall hold that there must be deducted from the $3,400 due November 1, 1894, the sum of $587.50, leaving the balance then due $2,812.50; interest thereon to November 1, 1895, at 8 per cent., $225—total amount due November 1, 1895, $3,037.50. Deduct the value of the use and occupation for 1895, ($587.50), leaves $2,450; interest thereon to November 1, 1896, $196—total amount due November 1, 1896, $2,646. Deduct the value of the use for 1896, ($587.50), leaves $2,058.50 due November 1, 1896. The judgment of this court is that defendant must pay to the Clerk of the District, in and for the County of Traill, State of North Dakota, the sum of $2,058.50, with interest thereon at 8 per cent. from November 1, 1896; said

money to be paid within thirty days after the final judgment is entered herein by the District Court, in pursuance of the mandate of this court. Plaintiff shall be entitled at any time after such payment to receive such money on executing and delivering to said clerk, for the benefit of the defendant Mrs. Kelly, a warranty deed of the property described in the complaint herein, excepting from the warranty against incumbrances the taxes for 1897. This decree shall immediately upon the payment of such money to the clerk stand as a transfer of the title to said property from the plaintiff Plummer to the defendant Mrs. Kelly, without the execution of any deed. But the plaintiff shall not be allowed to receive such money until he executes and delivers the deed hereinabove specified. The defendant shall be entitled to the possession of the land immediately on the payment of the money; and the District Court will, on a proper showing that this has been done, order that a writ of assistance issue for that purpose. As the judgment is more favorable to the plaintiff than the judgment of the District Court, the plaintiff will recover costs in this court, less $82.20, costs taxed in favor of the defendant in the District Court; this amount to be deducted from the plaintiff's costs in taxing the same. If defendant fails to make payment within the time specified, her rights in this land shall be forever barred. Let judgment be entered in accordance with this opinion, and said judgment shall be without prejudice to the right of Mrs. Kelly to recover the value of the use of the land for 1897. All concur.