(81 N. W. Rep. 72.)

---

LINA ERICKSON *vs.* ANNIE E. KELLY.

Opinion filed October 28, 1899.

**Assignment—Delivery.**

A written instrument does not take effect until it is delivered, and, to be effectual, such delivery must be intentional, made .with the

purpose that the instrument shall become operative, and have the effect to place it beyond the right to be recalled.

### Evidence Discloses No Delivery.

The plaintiff's right to equitable relief in this action is wholly dependent upon a certain written assignment which she alleges was executed and delivered to her by the defendant. *Held,* under the evidence, that there was no delivery of such assignment, and it never became operative, and hence plaintiff is not entitled to relief.

### Certificate to Stated Case—Sufficiency.

The certificate of a trial judge to a statement of the case properly settled and allowed in a case tried under section 5630, Rev. Codes, as amended by chapter 5 of the Laws of 1897, reciting that such statement "contains all of the evidence introduced," is sufficient to permit us to review the entire case upon appeal, provided it does not appear affirmatively elsewhere in the record that such statement does not contain all of the evidence offered at the trial.

Appeal from District Court, Traill County; *Pollock,* J.

Action by Lina Erickson against Annie E. Kelly. Judgment for plaintiff. Defendant appeals.

Reversed.

*Tilly & McLeod,* for appellant.

*J. F. Selby* and *Swenson & Norman,* for respondent.

YOUNG, J. This is an action on the equity side of the court, in which plaintiff asks that the defendant be required to execute and deliver to her a deed of conveyance of certain lands situated in Traill county. She also asks a money judgment for the value of their use for the year 1898. A trial was had in the District Court, under section 5630 of the Revised Codes as amended by chapter 5 of the Laws of 1897, in which the plaintiff was successful. Defendant brings the case here for a trial anew.

It will be necessary, to an intelligent understanding, to state a few facts, some of which are prior and others subsequent to the date of the particular transaction which furnishes the basis of the present action. On April 13, 1891, one A. L. Plummer was the owner of the tract of land here involved. On that day he made a written contract for the sale of the same to Mrs. A. E. Kelly, the defendant. Under its terms, she was to pay the purchase price by applying one-half of the crops grown thereon each year. It appears that she had complied with the conditions of the contract, and was not in default in the spring of 1895, when the transaction with Mrs. Erickson too place. Plummer, however, had assumed that the contract was forfeited, and during a portion of the year 1894, and in the spring of 1895, was attempting to get and keep possession of the land. Mrs. Kelly was at this time living in Minneapolis. Her husband, Thomas Kelly, was in Traill county, looking after her interests, and it appears that at all times prior thereto he had acted for her in a general way, either in farming the land or in procuring a tenant to work it. When Plummer attempted to retake the land,

Mr. Kelly consulted one P. G. Swenson, an attorney, at Hillsboro, and at all times thereafter, and up to December 21, 1897, Mr. Swenson acted as attorney for Mrs. Kelly in all of the negotiations, as well as the protracted litigation which followed relative to the sale contract. In the spring of 1895, Plummer brought an action to cancel and annul the contract for certain alleged defaults. Mrs. Kelly about the same time instituted an action to compel Plummer to give her a deed. The two actions were consolidated, and tried as one, in the District Court. That court found for Mrs. Kelly. An appeal was taken, and upon a retrial of the case in this court, Mrs. Kelly was again successful, and a judgment was entered in her favor requiring Plummer to execute and deliver to her a deed of said premises upon the payment of the sum of money which this court found to be due upon the sale contract. See *Plummer* v. *Kelly*, 7 N. D. 88, 73 N. W. Rep. 70. The opinion of this court was handed down November 3, 1897. On December 21, 1897, Plummer executed and delivered a deed to Mrs. Kelly in compliance with the judgment of this court, and received from her the amount of money which the court had determined was still due upon the contract. On the 19th day of the following month, Mrs. Erickson commenced this action to compel Mrs. Kelly to deed the land to her, and as grounds for such relief alleges in her complaint that this sale contract between Plummer and this defendant, which had furnished the basis of all the litigation to which we have referred, was in fact assigned and set over to her on or about the 11th day of April, 1895, by a written assignment executed and delivered to her by the defendant on said date, which assignment was substantially as follows: "This agreement, made this —— day of April, A. D. 1895, by and between Mrs. A. E. Kelly, of the County of Hennepin, State of Minnesota, party of the first part, and Lina Erickson, of the County of Traill and State of North Dakota, party of the second part, witnesseth that the party of the first part, for and in consideration of the sum of $1,280, has sold, assigned, transferred, and set over, and by these presents does sell, assign, transfer, and set over, unto the said party of the second part, all her right, title, and interest in and to a certain contract for the purchase of the west one-half (W. $\frac{1}{2}$) of section twenty-nine (29), in township one hundred and forty-five (145) north, of range fifty-three (53) west, made and entered into between said Mrs. A. E. Kelly and one A. L. Plummer, which contract bears date the 13th day of April, A. D. 1891, and was filed for record in the office of the register of deeds in and for Traill county, North Dakota, on the 5th day of September, 1894, and was recorded in Book X of Deeds, on pages 222 and 223." It is further alleged "that, at the time of the execution and delivery of the written agreement by defendant to plaintiff as aforesaid, the plaintiff executed and delivered to defendant, as payment for the consideration of said agreement, her four certain promissory notes, as follows: One note for $280, dated April 11, 1895, due November 1, 1895; one note for $250, dated April 11, 1895, due November

1, 1896; one note for $250, dated April 11, 1895, due November 1, 1897; one note for $500, dated April 11, 1895, due November 1, 1898,—all of said notes bearing interest at the rate of 8 per cent. from date until paid." In an amendment to the complaint, it is alleged that plaintiff also executed and delivered to the defendant a second mortgage upon said lands and certain town lots to secure the payment of said notes; and, in what is called a "supplemental complaint," that the defendant wrongfully withheld possession of said lands from her for the year 1898, and that the value of its use is $900. In her several prayers for relief plaintiff asks judgment that the contract be specifically performed, and that defendant be compelled to execute a deed of conveyance, for $2,000 damages for the breach of the contract, $900 for the use of the lands for 1898, $100 for expenses in obtaining possession, and for costs and disbursements of this action. The plaintiff's claim to an interest in the land in question, and right to obtain a deed therefor, is wholly based upon the written assignment of April 11, 1895, which is above set out at length. It is not alleged or contended that there was any other contract, or that plaintiff acquired any interest, save through this instrument. The plaintiff asks that this contract be specifically performed, and counsel in his brief treats the action as one for the specific performance of a contract to sell and convey real estate.

In this there is an evident error as to the nature of the instrument upon which they rely; for a reference to the contract will show that it is not an agreement to sell, and contains no executory obligations resting upon either party, but, on the contrary, purports to represent an absolute transfer of the Plummer contract immediately and without conditions. It is patent, if this assignment was executed and delivered by the defendant to the plaintiff as alleged, that subsequent to April 11, 1895, the date of the alleged delivery, the defendant was devested of all interest in the sale contract, and that the plaintiff on that date became the owner of, and succeeded to all of, the interests and rights which the defendant had therein on that date. While it is true this written assignment contains no promise which will furnish a basis for a decree for its specific performance, yet it is manifest that a court of equity, having assumed jurisdiction, may lay hold of the title in Mrs. Kelly's hands, and declare its nature, and at the same time adjust the rights of the litigants, and also direct a conveyance to the plaintiff, if that were necessary, if it satisfactorily appeared that the defendant had in fact acquired the title in violation of an assignment of her interest and right to acquire the same. Defendant's answer admits that the assignment was signed by her, but places its delivery in issue. Plaintiff's right to any relief depends upon whether or not the Plummer contract was assigned to her, and the answer to that question is dependent upon another, namely, was the written assignment delivered so as to become operative? for it is elementary that a written contract does not become binding until it is delivered.

Bish. Cont. § 349; Beach. Mod. Cont. § 8; 1 Add. Cont. 48. And such instruments do not take effect until delivered with an intent that they shall become operative. *Hibbard* v. *Smith*, 67 Cal. 547, 4 Pac. Rep. 473, and 8 Pac. Rep. 46. "To constitute a delivery, there must be an intention to part with the control over the instrument, and place it under the power of the grantee, or some one for his use." *Hotchkiss* v. *Olmstead*, 37 Ind. 74. See also, *Vaughan* v. *Godman*, 94 Ind. 191; *Fitzgerald* v. *Goff*, 99 Ind. 28. The instrument must have gone beyond his power to recall. *Younge* v. *Guilbeau*, 3 Wall. 636, 18 L. Ed. 262. See, also, *Standiford* v. *Standiford* (Mo.) 10 S. W. Rep. 836, 3 L. R. A. 299; *Stokes* v. *Anderson*, (Ind.) 21 N. E. Rep. 331, 4 L. R. A. 313, and notes. Further, the party relying upon a written instrument has the burden of showing a delivery. Has plaintiff shown that the defendant delivered to her the written assignment of April 11, 1895? A careful study of the evidence has satisfied us that she has not, and that said assignment was not delivered, and that plaintiff, therefore, acquired no interest in the Plummer contract, and accordingly must fail in this action. There is a vast amount of testimony in the record relating to conversations and matters occurring subsequent to the date the assignment is alleged to have been made and delivered, but the evidence relevant to the issue on the delivery is brief. Kelly testified that, when the difficulty with Plummer arose, he consulted with Swenson as an attorney; that the plaintiff proposed to buy the contract, and pay Plummer, etc.; that he, together with plaintiff's husband, went to Swenson, and the written assignment was drawn up by him; that he sent it to his wife, in Minneapolis, stating to her in the letter accompanying it "that Mrs. Erickson had offered us between $1,500 and $1,600 for the land, and advising her to sell it rather than to go to law with Plummer"; that the assignment was received back, in due course of mail, from his wife, and left with Swenson, who was acting for Mrs. Kelly in reference to the proposed sale as well as in the Plummer controversy; that the assignment was returned to him by Swenson, to be sent to his wife for acknowledgment; that he sent it to her, and informed her that plaintiff did not now intend to pay cash, but to give notes secured by a second mortgage upon the land and other property; that defendant refused to accept notes, and instructed him not to close the deal, and that she retained the assignment; and that he had no other authority to act for her than as contained in her letters. Mrs. Kelly's testimony on this point is as follows: "I know nothing about any arrangement which my husband made for the sale of the Plummer contract to Mrs. Erickson, except what he wrote me. When he first wrote to me about his arrangement with Mrs. Erickson, he sent me a sort of assignment of the Plummer contract for me to sign. He told me in his letter that if I wanted to take $1,500 or $1,600 in cash I could do that, or else the place would go into law. I signed this paper, and returned it to him. Later on, the paper was returned to me for correction. In the letter

he wrote to me at that time he informed me that they could not furnish the cash, and that I would have to take a second mortgage on property at Clifford, and also a second mortgage on the land. I refused to do so, and so notified him." All this occurred on or about April 11, 1895. It is undisputed that the assignment did not go beyond Swenson's possession, and into the control of the plaintiff. Likewise, it is clear that the notes and mortgage which plaintiff executed and left with Swenson as the consideration for the assignment did not go from his hands, and into defendant's control. Mrs. Kelly testified that she never saw the notes or mortgage until they were tendered to her by Swenson at the commencement of this action, more than two and one-half years after the time when the assignment was signed, and when three of the notes were past due. It seems probable that the assignment would have been delivered when first received from Mrs. Kelly, and the consideration paid, had the plaintiff been able to have settled with Plummer, by inducing him to accept the balance due him, or by obtaining an acknowledgment of the amount due and that the sale contract was valid, and thus assure herself that she was not buying a contract that was void, and the certainty of a lawsuit. Plaintiff's intention to consummate the purchase is shown by the fact that Swenson on her behalf arranged for the amount of money which they estimated was due Plummer. This was obtained from one Haber, and was placed by him temporarily in Swenson's hands, to be used as a tender to Plummer. If accepted, and a deed should be given to the plaintiff, it was to be secured by a first mortgage on the land, to be executed by her. The tender was made and refused, and the money received from Haber returned to him by Swenson on the same day. Neither money nor notes for the purchase price of the assignment were given or offered to the defendant or her husband. We have stated sufficient facts to show there could not have been a delivery which would bind Mrs. Kelly; for the only authority which she ever gave was contingent upon the payment of a cash consideration of between $1,500 and $1,600, and this was not paid. Further, we are satisfied that there was not even an unauthorized delivery of the instrument between the parties present at Hillsboro. Mr. Swenson was asked this question: "Q. What was the understanding between Mrs. Kelly and Mrs. Erickson as to the delivery of these papers?" His answer was this: "If the deed could have been obtained from Mr. Plummer that day, the papers and money, of course, would have been delivered; the money delivered to Mr. Plummer, and part of the money and a mortgage and the notes to Mr. Kelly, for Mrs. Kelly;" and elsewhere he testified that he still had the notes and mortgage in his possession up to the time this action was begun, and they had not been offered to the defendant until after she had obtained a deed pursuant to the decree of this court. Furthermore, it does not seem credible that any of the parties understood that the assignment had become operative; for within a few days after Plummer's refusal to deed, Mrs. Kelly

was made the defendant in an action to cancel the sale contract, and she began her action for specific performance, in her own name and right, and paid all of the expenses of that litigation, amounting approximately to $900,—a course utterly inconsistent with the idea that she had transferred her interest; for, if she had in fact done so, she had no further interest in the sale contract, and owed no obligation to this plaintiff to institute the suit. Further, during the two and one-half years that the suit was pending, no claim was made that Mrs. Kelly was not the real party in interest, although Mr. Swenson was her attorney in the case, and the plaintiff was at all times cognizant of the condition of the litigation, and plaintiff was in fact a witness in the case. It was not until Mrs. Kelly had secured a deed at an expense which her circumstances could illy afford that the plaintiff came forward, and tendered the notes and mortgage, and asserted that the assignment of the sale contract was absolute at its date. It is plain, too, that the plaintiff did not consider herself bound by the assignment; for Mr. Swenson, testifying on her behalf, said: "I do not presume they (the notes and mortgage) would have been delivered to Mrs. Kelly, if the action brought by her against Mr. Plummer had gone against her." The fact that the evidence shows that the land had almost doubled in value may have had something to do with the origin of this action to recover it. The conclusion is irresistable that the assignment was not delivered and did not become operative. Hence plaintiff must fail.

At the close of respondent's brief it is urged that this court is without jurisdiction to try the case anew, for the reason that the certificate of the trial judge attached to the statement of the case does not state that it "contains all of the evidence offered at the trial in the District Court." The objection is not well taken; neither is counsel's position sustained by the decisions of this court cited in its support. In *First Nat. Bank* v. *Merchants' Nat. Bank*, 5 N. D. 161, 64 N. W. Rep. 941, the certificate did not show that the statement contained all of the evidence offered, but merely that it contained all of the testimony "taken" at the trial. In *Bank* v. *Davis,* 8 N. D. 83, 76 N. W. Rep. 998, the certificate of the trial judge contained no reference whatever to the evidence, and the stipulation of counsel upon which it was based made it appearent that all of the evidence offered was not in fact in the record. In *Edmonson* v. *White,* 8 N. D. 72, 76 N. W. Rep. 986, the certificate was that the statement contained all the evidence "considered" by the trial court, and it also appeared affirmatively in the record that it did not contain all of the evidence offered. The language used in the certificates in the cases cited was insufficient, because it showed affirmatively that the evidence embodied in the record was only such as the trial court had considered and acted upon, and was not all the evidence offered. In the case at bar the certificate attached to the statement of the case states that it "contains all of the evidence introduced." In the absence of anything in the record to

show that all of the evidence offered is not in the statement,—and there is no claim that it is not,—we think that the certificate is sufficient. It is to be presumed, when it does not appear otherwise, that the trial judge received all of the evidence offered or introduced by the parties, as he is required by the statute to do. Under these circumstances, a certificate that the statement contains all the evidence "introduced" is equivalent to all the evidence "offered," and is sufficient. The judgment of the District Court is reversed, and that court is directed to enter a judgment dismissing this action. Appellant will recover costs of both courts. All concur.